# JONES AND WIFE *v.* STEAMSHIP CORTES.

In an action for breach of a contract to convey plaintiffs from San Francisco to San Juan del Sur, in Nicaragua, plaintiff may recover not only the direct pecuniary loss resulting from the breach of the contract, but also damages for any fraudulent or oppressive conduct on the part of defendants, producing great bodily or mental suffering. The whole case should go to the jury, and damages be awarded commensurate with the injuries sustained.

Under our system there is but one form of action, and the statute makes no distinction in matters of form between actions of contract and those of tort, and relief is administered without reference to the technical and artificial rules of the common law.

All matters arising from and constituting part of the same transaction may be litigated in the same action. Every action, under our system, may be termed an action on the case, and any ground of relief which can be regarded as part of the case may be included in the action.

Under our system, a cause of action *in tort* may be united with a cause of action on contract, if the two causes of action arise out of the same transaction.

Cases from New York cited to show that, although there as here the statute provides a claim for injuries to the person shall not be joined with a claim for injuries to character; yet if the facts of the whole case or transaction embrace an injury to the person, and also an injury to the character, then plaintiff may recover in one action for the compound injury.

APPEAL from the Seventh District.

This is an action brought by Alexander Jones and Mary H., his wife, against the steamship Cortes, to recover damages for the wrong committed by the agents and owners of the defendant, who for a valuable consideration paid them by Mrs. Jones, (before her marriage to Alexander Jones) contracted to transport her from San Francisco to San Juan del Sur, and received her on board as a passenger, but instead of landing her at the port of San Juan, landed her at Panama.

The complaint verified avers that in March, 1856, the Accessory Transit Company were the owners of the steamship Cortes and other steamships, engaged as common carriers in the transportation of passengers and property, between San Francisco and San Juan, in Nicaragua ; that the authorized agents of the Cortes, at San Francisco, on the twentieth of March, 1856, contracted with Mrs. Jones, (then Mrs. Musgrove) for the sum of fifty dollars paid by her, to transport her to San Juan on said steamship to sail

on said day; that the ship sailed on the appointed day, she being a passenger on board; that in due time the Cortes arrived in the harbor of San Juan, but did not and would not land the plaintiff Mrs. Jones there, but on the contrary, against her will carried her to the port of Panama and landed her there amongst strangers, without the means of support or of proceeding on her journey, in an unhealthy climate and amongst a hostile population, where she was exposed to great dangers; that she was detained there ten days before any opportunity could be found for her to leave; that her object in going to San Juan was to attend to important business there which required her personal presence, and that to arrive at San Juan, she was obliged to proceed to New York and from there return to Nicaragua; and that the acts complained of were committed by the officers of the steamship, under orders from the owners; and judgment is prayed for ten thousand dollars damages, for losses and expenses sustained in consequence of her failure to arrive at Nicaragua in due season, (which are specifically averred and shown) and of her forced journey to New York and thence to Nicaragua, and for her detention and suffering by reason of the fraudulent, wrongful and malicious acts of the defendant.

The complaint further states, that at the time the defendant's agents at San Francisco entered into the contract with her, they knew that the contract between the owners of the steamship line and the Government of Nicaragua, under which the line had been running, had been annulled by the Government of Nicaragua; and goes on to narrate certain facts explanatory of the action of the officers of the steamship in landing her passengers at a different port than the one to which they were destined, and of the reasons of such action.

Defendant demurred and answered at the same time, but proceeded to trial on the merits.

The answer alleges in substance, that while the steamship Cortes was in the harbor of San Juan, the plaintiff Mary H. made no application to be landed there, and that it was with her consent that the Cortes proceeded to Panama; and denies that the deviation was wanton or malicious. As to all the other material allegations of the complaint, the agent who makes answer for the defendant

states that he has no knowledge, or information sufficient to form a belief, and therefore denies them.

Upon the trial, the plaintiffs proved the making of the contract as alleged, the payment of the money, the sailing of the ship with Mrs. Jones as a passenger, the order given by the owner to the master not to land passengers at San Juan, but to proceed with them to Panama, the arrival of the Cortes at San Juan on the first of April, 1856, her departure thence, that no opportunity was given the plaintiff Mary H. to land at San Juan, on the contrary that all passengers were prohibited from landing, and that she was taken thence to Panama against her will and in spite of her remonstrance; that the Cortes arrived there on the sixth of April; that the plaintiff Mary H. was there ordered ashore without any provision made for her support, or to send her to her destination; that she was without means; that she remained there, without means, until the sixteenth of April; that during her detention there a dangerous riot occurred, in the course of which many Americans, passengers across the Isthmus, were killed by the natives; that the climate of the Isthmus is unhealthy; and that there was no direct communication between Panama and San Juan, and Mrs. Jones was obliged to go, and did go to New York, and from there return to Nicaragua. Her marriage with the plaintiff Alexander was also proved.

Defendants admitted the expenditure of the plaintiff Mary H., (for expenses of detention, voyage to New York, etc.) as stated in the complaint, to the amount of three hundred and eighty dollars.

On the trial, plaintiffs were permitted to show, against defendant's objection, that the agent of the steamer at San Francisco knew of Walker's having seized the property of the Transit Company on the Isthmus prior to the sailing of the steamer, and wished to keep such knowledge secret from the passengers until after her departure on the twentieth of March. Plaintiffs were also permitted to offer in evidence, against defendant's objection for irrelevancy and incompetency, the advertisement published in the San Francisco "Alta," from March 17th to March 20th, 1856. The substance of the advertisement was, that the "Cortes" would leave San Francisco March 20th, for San Juan del Sud, connecting at

32

San Juan del Norte with the "Northern Light" for New York, and the "Prometheus" for New Orleans; that this route was the shortest, quickest, and healthiest; that the Isthmus was in excellent order, and the transit made with unusual comfort and speed, owing to many recent improvements.

The Judge charged the jury as follows: "This is an action in nature of trespass on the case founded on certain statements, that the owners, officers and agents of defendant practised deceit upon plaintiff, and that she, being on board of ship and under contract of passage to San Juan del Sur, in Nicaragua, was taken by them to a port different from that to which she contracted to go; that she was taken to Panama, an unhealthy place, and subjected to annoyance, disquiet and expenditure of money. You will be authorized to find damages to the amount of three hundred and eighty dollars, that being the sum which the counsel now in open Court admit to have been the expenditure caused by plaintiff being carried to Panama. If you are satisfied from the circumstances proved that this was part of a preconcerted plan, and that plaintiff was induced to take the voyage to San Juan del Sur and afterwards carried to Panama, you can find exemplary damages. I do not mean that the doors are thrown wide open, and that you may find any sum on account of damages done to citizens of California, but that you must be confined to the damage done this plaintiff, and that in estimating such damages you must find what will be a fair compensation for the injuries done her, and in estimating the damages you may consider not merely her bodily injuries, but the agony of mind and lacerated feelings directly consequent thereupon.

" The deception in the voyage of defendant need not have been proved to have been on this particular plaintiff specifically, but if defendant, through their agents or owners induced this voyage, knowing it could not be carried out, they are liable."

Defendant excepted to the charge. Verdict for plaintiff $3,800. Judgment accordingly. Motion for new trial overruled.

Defendant appeals.

*D. Lake*, for Appellant.

If the action is founded on contract and the damages are sought

Jones v. Steamship Cortes.

for its nonperformance, then neither the rulings of the Judge on the admitting of evidence nor his charge to the jury can be sustained.

There are cases where a party has his election either to sue in assumpsit on the contract, or in an action on the case as for a tort, and the present may be one of them; or the facts may even support an action of trespass against the master as for a false imprisonment for taking the plaintiff from San Juan to Panama. (1 Chitty Pl. 135.)

But the question here is, what the case is as made by the complaint; not what it might have been. Every pleader knows the difference between reciting a contract as mere inducement to the gist of the action, and counting on the contract as the substantial cause of action. In 2 Chitty's Pleadings, 653, will be found the form of a declaration in case against a carrier for losing a box; and at p. 355 is a form for a like injury in assumpsit.

The difference is marked, and exists as much under our statute as at common law. If the action is brought in assumpsit the cause of action on contract may be joined, as for money had and received on promissory notes, etc., and the defendant may plead a nonjoinder of coöbligors.

If on the other hand the action is for a tort, other causes of action founded on contract cannot be joined with it, but other torts may, and no nonjoinder can be pleaded. (*Corbet* v. *Packington,* 6 Barn. & Cress. 268.)

The complaint in the present case, not only in its general scope and frame, is founded on contract, and the damages sought for its breach only; but it would seem that the pleader, fearing that would not sufficiently characterize it, and correctly supposing that, to be entitled to the remedy under the statute, the action must be founded on contract, is careful to charge the acts complained of as " a nonperformance of the said contract;" that she was not taken to and landed at San Juan, " but in violation of said contract was taken to Panama."

The action then being confessedly assumpsit, and the damages being for a breach of the contract, the question is, what evidence was admissible on the question of damages?

The general rule is plain enough, and in actions on contract there are very few cases where this is any difficulty in its application.

The rule is, that the plaintiff is to be made good for the pecuniary loss sustained by reason of the contract not being performed; and in no case can the motive which actuated the defaulting party, or the mental or physical suffering of the plaintiff, be admitted to enhance the damages.

It is otherwise in actions for a tort. In many cases the manner of inflicting the injury, the motive, the circumstances attending the commission of the wrong, may be proved by way of enhancing the damages—not by way of vindictive damages, but by way of compensating for wounded feelings.

The first two points made by the appellants are, that the Judge erred in admitting the testimony of Baldwin and the advertisement in the "Alta California" newspaper; this testimony was admitted on the theory that it was competent to show, by way of enhancing the damages, that a deception was practised on the plaintiff to induce her to take passage.

This testimony, we submit, was clearly incompetent. To support this relief it would be necessary to go even further than allowing the circumstances attending the breach of the contract to increase the damages. It would permit the motive which actuated the party in making the contract to be inquired into.

This is what perhaps has never been attempted before.

2. The Judge's charge is erroneous. The foregoing observation in regard to the admissibility of the testimony applies also to this point.

The Judge put the case to the jury as an action on the case for a deceit practised on the plaintiff Mary, in inducing her to take passage on the steamer for San Juan, and he charged that if the jury should find that it was part of a preconceived plan, (that is, to get her on board, knowing that she would not be landed at San Juan) and she was afterwards taken to Panama, they were authorized to find exemplary damages. This was error. (*Warner* v. *Uncle Sam*, 9 Cal. 697.)

*A. P. Crittenden*, for Respondents.

1. There was no error in admitting evidence to show knowledge on the part of the agents of defendant that the transit across the

Isthmus could not be made; and hence that they acted willfully, etc.

This evidence goes to show that the defendant's agents willfully exposed the plaintiff to the injury she suffered. That they inflicted it in intention from the very commencement of the voyage. The willfulness of the act is a material element of the plaintiff's case. If the voyage to San Juan had been prevented by inevitable accident, and the plaintiff had been landed at Panama from necessity, it would have constituted a complete defense. Why then should not the plaintiff show that there existed no such necessity? That the defendant's agents forced her to land there without excuse. And if she be allowed to prove the act willful, why not prove it so in the greatest degree, by showing that from the commencement of the voyage they intended to commit the wrong?

The action not being merely for a nonperformance of the contract, and the damages being altogether independent of the amount of passage money paid, and having to be determined by the facts and circumstances of the case, the plaintiff had a right to show so material a fact, and one tending so greatly to aggravate the wrong, as that the defendant's agents knew that the voyage was impossible.

2. It is contended by the appellant that there was error in the charge of the Court.

The appellant's counsel is mistaken in supposing that the Court charged the jury that this was " an action in the nature of trespass on the case, for a deceit practised on the plaintiff, Mary H. Jones, in inducing her to take passage on the steamer."

By way of introduction to the principles about to be laid down and by which the jury were to be governed in ascertaining the amount of damages, the Court stated in general terms the nature of the action; that it was an action in the nature of trespass on the case, founded on certain statements. He then proceeded to say what those statements were; or in other words, to give the substance of the complaint; and in so doing, mentioned it as one of the averments of the complaint, " that the owners, officers and agents of defendant practised deceit upon plaintiff; and that being on board of the ship, and under contract of passage to San Juan del Sud, in Nicaragua, she was taken to a different port," &c.

The counsel of the plaintiff is also mistaken in supposing that the Court charged the jury, that " if there was a preconceived plan to practise a deceit upon the plaintiff Mary H., in inducing her to take passage, they were authorized to find exemplary damages."

The existence of a preconceived plan to deceive was mentioned but as a single fact, which, in connection with others more material, would authorize the jury to find exemplary damages ; and the Court explained what was intended in this charge by the expression " exemplary damages."

3. It is also insisted for the appellant, that the action is for a breach of contract ; and that the whole scope of the charge is at variance with the case made in the complaint and with the evidence.

It is wholly immaterial how we consider the action, whether as one for the tort committed in landing plaintiff at a different port from that of her destination, or for the malperformance of the contract in doing the same act under the circumstances stated, and which were productive of consequences alleged by way of special damage. In either case, the steamer is liable. (Sec. 317, Pr. Act.)

The intention of the law is to give an action against the vessel itself in all cases when in connection with the employment of the vessel a cause of action exists against the owner ; and it is immaterial whether the action is upon a contract or for a tort.

In short, the statute, in effect, confers full admiralty jurisdiction ; and the proceedings in actions brought under the statute are to be governed by the principles and forms of Admiralty Courts, except where otherwise directed. (*Averill* v. *The Hartford*, 2 Cal. 308 ; *Taylor* v. *The Columbia*, 5 Id. 268.)

The ground of action in this case is, that the plaintiff was carried by the defendant's owners and agents upon the defendant to a foreign port, remote from her destination, landed there destitute of means, exposed to the risk of an unhealthy climate and to danger at the hands of a lawless mob.

The complaint states a contract, it is true, for it was in virtue of the contract that the plaintiff was lawfully on board the steamer. But the contract is not therefore the ground of action, nor does its existence diminish the liability of the owner or the vessel, nor lessen the damages to be recovered. The fact of the contract is

an aggravation of the wrong.   What is the measure of damages in a case of this kind?   Not the mere price of the passage, nor the cost of getting to the port of destination; for between these and the wrong committed there is no relation whatever.

The rule might be so, if the plaintiffs were complaining of a refusal to receive her on board the ship.   But the gravamen of the complaint is the willful landing of the plaintiff in a strange place, remote from her destination, and exposing her, a lady, to the pain and mortification of being thrown amongst strangers, without a protector.

These circumstances make the real wrong a wanton outrage, and all of which are to be considered in estimating the damages.

Substantially, the charge submitted the whole case to the jury to find what, in view of all the circumstances, would be a fair compensation for the injuries done her—considering not merely bodily injuries, but the mental sufferings consequent upon the wrong.

In support of the correctness of this charge see *Chamberlain* v. *Chandler* (3 Mason, 242).

COPE, J. delivered the opinion of the Court—FIELD, C. J. concurring.

In 1856 the defendant was engaged in carrying passengers from the port of San Francisco, in this State, to San Juan del Sur, in Nicaragua, and the action is brought for the breach of a contract to convey the plaintiff, Mary A. Jones, who was then unmarried, from the former to the latter port, and for wrongs and injuries sustained by her in consequence of the violation of the agreement. The grievances complained of were occasioned by the voluntary action of the owners and agents of the defendant, and on the trial of the case the plaintiffs were permitted to present the whole matter for the consideration of the jury.   They were allowed to show, among other things, that the contract was fraudulent in its inception, and that great mental and bodily suffering had been produced by the peculiar circumstances attending its infraction.   The evidence established a most aggravated case of hardship and oppression, and a verdict was rendered for $3,800 damages.   It is objected that the rule of damages adopted by the Court below was

erroneous, and the validity of this objection is the principal question submitted for our determination.

In actions founded upon a breach of contract, the common law adheres with great tenacity to the rule which excludes all inquiry into the motive or *animus* of the contracting parties, and limits the damages to the direct pecuniary loss resulting from the breach. But there are instances, says Chitty, in which the defendant may be regarded in the light of a wrong-doer in breaking his contract, and where this is the case a greater latitude is allowed the jury in assessing the damages. (Chitty on Cont. 767.) It was held by the Constitutional Court of South Carolina, in an action of assumpsit, that the existence of fraud was sufficient to warrant the jury in departing from the ordinary rule upon this subject. "Assumpsit," said the Court, "is *nomen generalissamum*, under which a great variety of special cases are embraced. It includes every case by simple contract, whether in the nature of a warranty, a promise to pay money, or an undertaking to do or perform any act from whence a promise, either express or implied, can arise. The damages to be recovered must always depend on the nature of the action and the circumstances of the case. The difference of opinion which seems to exist on the subject, we apprehend has arisen from confounding the distinctions between the different forms of assumpsit. In an action for money had and received, the actual amount of money received, with interest in some cases, should be the measure of damages. In an action for goods, or any specific chattel, sold and delivered, the value of the thing sold; and so in all other cases which furnish a standard by which the jury can be governed. But in cases of fraud, and other cases merely sounding in damages, the jury may give a verdict to the whole amount of the injury sustained, or imaginary damages." (*Rose* v. *Beattie*, 2 Nott & McCord, 538.) This case was subsequently approved in *Garrett* v. *Stuart* (1 McCord, 514). Sedgwick, in his work on the measure of damages, combats this doctrine with great earnestness and ability. After discussing the matter at some length, he says: "On the whole, therefore, notwithstanding the cases cited in the notes, and the authority of the tribunals by which they are decided, I conclude that so long as our present forms of action and rules of

Jones *v.* Steamship Cortes.

pleading and evidence exist, their clear and irresistible result is, that the damages in actions of contract are to be limited to the consequence of the breach of the contract alone, and that no regard is to be had to the motives which induce the violation of the agreement." (Sedg. on Dam. 208.)    But in a note on the same page, he adds: " I am far from desiring to express any opinion in favor of the doctrine of the text; on the contrary, if the plaintiff in an Anglo-Saxon Court of justice shall ever be permitted to state his complaint according to the actual facts, and not be compelled to use an unmeaning formula, I can see no reason, greatly as legal relief would be thus extended, why exemplary damages should not be given for a fraudulent and malicious breach of contract, as well as for any other willful wrong."

In the present case, it is not important to inquire which of these opinions, in relation to the rule at common law, is correct.    The injuries complained of were of such a character that redress may undoubtedly be obtained in some form, and under our practice there is no reason why the plaintiffs should be compelled to resort to different actions for the relief to which the law entitles them.    We have but one form of action, and nothing more is required than a statement in ordinary language of the facts relied upon for a recovery.    The statute makes no distinction in matters of form between actions of contract and those of tort, and relief is administered without reference to the technical and artificial rules of the common law upon this subject.    Different causes of action may be united in the same complaint, and the only restrictions upon the pleader in this respect are those imposed by the statute.    Our system of pleading is formed upon the model of the civil law, and one of its principal objects is to discourage protracted and vexatious litigation. It is the duty of the Courts to assist as far as possible in the accomplishment of this object, and it should not be frittered away by the application of rules which have no legitimate connection with the system.    The provisions for avoiding a multiplicity of suits are to be liberally and beneficially construed, and we see no reason why all matters arising from and constituting part of the same transaction should not be litigated and determined in the same action. Causes of complaint differing in their nature, and having no con-

nection with each other, cannot be united, but the object of this rule is to prevent the confusion and embarrassment which would necessarily result from the union of diverse and incongruous matters, and it has no application to a case embracing a variety of circumstances so connected as to constitute but one transaction. The statute provides that a claim for injuries to the person shall not be joined with a claim for injuries to character. In a case in New York, involving the construction of a similar provision in the code of that State, it was held that a demurrer to the complaint, the facts stated being sufficient to sustain an action either for *assault and battery* or for *slander*, was not well taken. The Court said : " The complaint, in fact, contains but a single cause of action. The allegations relate to a single transaction. The complaint purports to give the history of one occurrence, and no more. This history embraces what was done and what was said on the occasion. Each constitutes a part of the *res gestæ.* What is alleged to have been done, would, if established upon the trial, sustain an action for personal injury. What is alleged to have been said, would, if established upon the trial, sustain an action for injury to the reputation. The whole together, constituting as it does but a single transaction, makes but a single cause of action. The plaintiff brings his action upon the whole case, to recover damages for the compound injury he has sustained. *     *     When it comes to trial, all that was said and all that was done become the proper subjects of investigation, and a single verdict adjusts the rights of the parties." (*Brewer v. Temple,* 15 How. Pr. 286.) In *Robinson* v. *Flint* (16 How. Pr. 240) a cause of action in tort was united with a cause of action on contract, and it appearing that these causes of action arose out of the same matter, it was held that they were properly united. The code contains a special provision upon this subject, but we think that the effect of our statute is the same, and that the construction would not be altered by the incorporation of a similar provision. Having adopted a system which rejects all distinctions in matters of form, it would be folly to subject it to the operation of rules founded upon distinctions of this nature. Every action under our practice may be properly termed an action on the case, and it would seem that any ground of relief which can be regarded as a part of the case, may with propriety be included in the action.

Jones *v.* Steamship Cortes.

These views are decisive of the questions presented in this case, and there is no necessity for a more particular reference to the points made by counsel.    The objections to the verdict are based upon the distinction at common law between actions of contract and those of tort, and this distinction, and the rules founded upon it, are alike inapplicable to our practice.    The plaintiffs have brought their suit upon the whole case, to recover damages not only for the breach of the contract, but for the wrongs and injuries committed by the owners and agents of the defendant in that connection. The defendant is liable for all the damages resulting from these causes, and there is certainly no impropriety in adjusting the whole matter in one controversy.    There was no error in permitting the plaintiffs to give evidence of the fraud practised in the inception of the contract.    The tendency of the evidence on this point was to show a predetermination not to carry out the agreement, and there is no doubt that this was a proper subject of consideration in connection with the tortious acts subsequently committed.    If these acts were such as the law could not recognize for the purposes of redress, the admission of this evidence would probably be sufficient to reverse the judgment; but under the circumstances we do not see upon what principle it could have been rejected.    It was proper that the whole case should be submitted to the jury, and damages awarded commensurate with the injuries sustained.    It was a case of unmitigated hardship, and the acts complained of were not only unnecessary, but without any excuse or palliation whatever.    They were acts of willful oppression, and it would be a reproach to the law if nothing could be recovered but the mere pecuniary loss resulting from the breach of the contract.

We think that no principle of law has been violated, and that the jury exercised proper discretion in assessing the damages.

Judgment affirmed.