[No. C000253. Third Dist. May 17, 1988.]

RENAE PERRY, Plaintiff and Respondent, v.
PAM ROBERTSON et al., Defendants and Appellants.

**COUNSEL**

Rader, Rader & Goulart and Richard H. Gray for Defendants and Appellants.

James J. Christianson, Quattrin, Johnson, Campora & England, Johnson & Campora and David B. Johnson for Plaintiff and Respondent.

**OPINION**

BLEASE, J.—This is an appeal from an order denying a motion to tax costs. Renae Perry obtained a favorable verdict in an action against the defendants, real estate brokers and salespersons, asserting liability for inadequate compensation received for the sale of her house attributable to their negligence in drafting the written sales agreement. The defendants acted for Perry under a written listing agreement which provided: "If action be instituted to enforce this agreement, the prevailing party shall receive reasonable attorney's fees and costs as fixed by the Court." Perry filed a timely motion for an award of costs and attorney's fees. Defendants opposed the motion contending that a fees award would be improper because Perry had pursued her cause of action as a tort rather than as a contract. They renew that contention on appeal.

We will conclude that Perry's pleading put in issue both contract and tort theories of recovery. Since the remedy sought and obtained—damages measured by the amount lost by the drafting error—is the same under either theory, Perry was not required to elect a remedy prior to the request for attorney's fees. The request for attorney's fees, as costs available only in a contract action, thus manifested an election to treat this tort-contract[1] as a contract. We will affirm the order awarding fees.

---

[1] In this context, whether the tort-contract action is the one or the other is purely one of legal perspective. This is analogous to the example of the line drawing which could be seen either *as* a duck or *as* a rabbit, a duck-rabbit, at the will of the viewer. (Wittgenstein, Philosophical Investigations (Blackwell ed. 1953) part II, p. 194e.)

## FACTS

Perry's complaint, in pertinent part, makes the following allegations. Perry engaged defendants Pam Robertson and Tom Kiernan Realtor, incorporated (Kiernan), to act as her agents for purposes of selling her house at 2313 Thompson Way, by means of a written listing agreement executed in June 1980. Perry did not have a copy of the agreement but asserted she would amend the complaint to incorporate it by reference. In January 1981 Robertson informed Perry that a buyer had been found. Perry met with the prospective buyer at a Kiernan office. In the presence of Robertson and defendant Barney Russell, the manager of the office, Perry negotiated an agreement for the sale of her house. The terms of the agreement included, as consideration owed Perry, an ownership interest in another house at 2622 Erin Drive and the right to reside in that house as of March 1, 1981, in return for making the mortgage payments. Robertson then prepared a writing ostensibly setting forth the agreement and Perry signed it.

Robertson was negligent in failing to set forth the full agreement negotiated by Perry in the writing she prepared. Robertson later negligently prepared escrow instructions without any reference to Perry's acquisition of an ownership interest in the Erin Drive house. As a result of the negligent preparation of the escrow instructions escrow closed to the financial detriment of Perry.

The buyers did not abide by the promises to convey to Perry an ownership interest in the Erin Drive house and to put her in possession of those premises and on April 18, 1981, caused her to be served with a three-day notice to pay rent or quit her residence at 2313 Thompson Way. Perry complained to Russell that the transaction had been handled improperly. Russell told them not to worry, not to get a lawyer, and that something would be worked out. He failed thereafter to take any action on her behalf.

As a result of the negligence of Kiernan, Russell and Robertson, Perry's property was lost to her and she received substantially less than its fair market value as the sale price. Perry also suffered consequential bodily injury and incurred medical expenses.

Defendants Kiernan, Russell, and Robertson jointly answered this complaint with a general denial. Their answer seeks, inter alia, their attorney's fees incurred in defending the action. At some point prior to trial defendants admitted that they had been negligent, leaving as issues for trial the nature and extent of Perry's damages. In the fall of 1982 both sides filed a form at-issue memoranda in which, in the boxes under "Nature of Action," each checked "Contract" and "Negligence," to which each appended the

typewritten notation "Misrepresentation." In a subsequent form at-issue memorandum filed by Perry, she identified her theory as solely that of contract by checking only the box labeled "Contract."

Approximately two weeks before trial Perry's counsel sent a letter to counsel for defendants explaining her position on settlement of the case. The letter asserted: "we allege the written listing agreement as the basis for the breach of the obligation owed by your clients to Ms. Perry." It also related Perry's intention to seek attorney's fees under the provision of the listing agreement at the conclusion of the action.

At the trial the matter was submitted to the jury under instructions requested by Perry that "[i]n calculating the damage to plaintiff for her loss of property, the value of such property to her should be the value of such property, less any benefits actually received by her." The jury returned a general verdict awarding Perry damages in the amount of $12,781 against the defendants. The record on appeal does not contain a reporter's transcript of the proceedings at trial. Within 10 days after entry of the judgment Perry filed a motion for an award of costs and attorney's fees. Defendants opposed the award of costs and attorney's fees, the latter on the ground that Perry had pursued a cause of action for negligence, a tort, and the action was therefore not an action on the contract within the meaning of Civil Code section 1717. The trial court ruled that Perry should recover her fees, reasoning that her cause of action sounded in tort and in contract and that she had made no irrevocable election to pursue only her tort remedy. We will affirm the judgment.

## DISCUSSION

### I

Defendants contend that the trial court erred in awarding Perry attorney's fees as the prevailing party pursuant to Civil Code section 1717 because Perry's action, as prosecuted, sounds in tort and is not an action "on a contract" as required by that section.[2] (See e.g. Pearl, Cal. Attorney's Fees

---

[2] Section 1717, as applicable at the time of trial, provided in pertinent part: "(a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the prevailing party, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements. [¶] Where a contract provides for attorney's fees, as set forth above, such provision shall be construed as applying to the entire contract, unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract. [¶]

Award Practice (Cont.Ed.Bar Supp. 1987) § 1.6A, pp. 7-8; 7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 143, pp. 568-569.) So framed, the dispositive question is whether Perry's pleading served to put the contract theory in issue.

### A.

At the outset we note that defendants were given actual notice that Perry intended to pursue a theory of breach of contract despite their protestations to the contrary. Defendants were so informed by numerous means, including the trial setting memoranda and the letter sent by Perry before trial stating that attorney's fees were sought.

If defendants had lingering doubts, they unaccountably eschewed the means by which the plaintiff's theories might have been brought into explicit focus, such as contention interrogatories, a pretrial conference statement, a motion *in limine* or appropriate instructions to the jury. Defendants have not indicated any manner in which the lack of greater specification of the terms of the listing agreement deprived them of an opportunity to demur or misled them concerning Perry's intent to pursue a breach-of-contract remedy. Defendants made no challenge to the pleading. The defendants' general denial denied only the material allegations of the complaint. (Code Civ. Proc., § 431.30, subd. (d).) Moreover, defendants waived their defense to liability, tendering only the question of damages to the jury. In this posture, defendants' implied claims to ignorance of Perry's intentions are implausible.

Thus, the sole issues to be decided are whether the complaint pled a claim in contract and whether Perry elected a consistent remedy. We conclude that the complaint did so and that the damages sought and obtained are consistent with a remedy in contract or tort. Accordingly, there was no remedy of consequence to elect except for attorney's fees and defendants are patently not in doubt about Perry's election on that score.

### B.

The dispute concerns an oral agreement for the sale of Perry's house negotiated by defendants. The complaint alleges that, in the reduction of the agreement to writing, defendants negligently failed to include, as consideration for the sale, an ownership interest in another house, resulting in a substantial reduction in the amount received for her house and consequen-

---

Reasonable attorney's fees shall be fixed by the court, upon notice and motion by a party, and shall be an element of the costs of suit."

tial personal injuries and medical expenses. Defendants' argument is bottomed on the premise that the claim so pleaded is inconsistent with a legal theory of breach of contract. The premise is untenable.

"There is in this State but one form of civil action for the enforcement or protection of private rights and the redress or prevention of private wrongs." (Code Civ. Proc., § 307.) " 'Th[is] statute makes no distinction in matters of form between actions of contract and those of tort, and relief is administered without reference to the technical and artificial rules of the common law upon this subject. . . .' " (4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 21, p. 65, quoting from *Jones* v. *Steamship Cortes* (1861) 17 Cal. 487, 497.)

In pleading a claim for relief, California follows the " 'primary right theory' of Pomeroy." (See 4 Witkin, Cal. Procedure, *supra,* § 23, p. 66, relying on Pomeroy, Code Remedies (5th ed. 1929) § 347, p. 528.) In pleading the question is: " 'Does the complaint state in ordinary and concise language facts sufficient to constitute a cause of action? That is the question, and not whether it is sufficient to show . . . any . . . technical form of action, *ex delicto* or *ex contractu*.' " (*Id.,* at § 21, p. 65, relying upon *Rogers* v. *Duhart* (1893) 97 Cal. 500, 504 [32 P. 570].) "[T]he existence of a legal right in an abstract form is never alleged by the plaintiff; but, instead . . . the facts from which that right arises are set forth, and the right itself is inferred therefrom." (Pomeroy, Code Remedies, *supra,* at p. 528.)

The relationship between the facts pled and the legal theories thereby tendered provides a recurrent conceptual problem. The facts of a properly pleaded complaint, i.e., the material facts, and "the [legal] right [which] is inferred therefrom" provide the woof and warp of a cause of action. It is the law which provides the organizing principle, i.e., the legal standard, by which the facts are made legally significant (i.e., material). "Actually the stating of facts involves a . . . process of *selecting* from among observed [or legally cognizable] phenomena those which are important *in view of our particular [legal] purpose . . . .*" (Clark on Code Pleading (1928) p. 155; original italics.) As we have elsewhere said: " 'The law and facts of a case bear a chicken and egg relationship. The law identifies the *kinds* of facts which are material to the case. The facts delimit the applicable propositions of law.' " (*Pultz* v. *Holgerson* (1986) 184 Cal.App.3d 1110, 1114, fn. 3 [229 Cal.Rptr. 531] [citation omitted].)[3] A single cause of action or claim, framed

[3] An example may illustrate the point. If (say) a statute requires that a given setback in feet be maintained for the development of a piece of property, a pleading alleging that such was not accomplished and seeking relief therefrom will necessarily allege a failure in measurement. As a *fact,* the allegation will assert that the appropriate distance in feet was not observed by the developer. The materiality of the factual assertion is provided by the statute

in ultimate facts, may sound, by virtue of this conceptual relationship, variously in, e.g., tort or contract. ■ (See 4 Witkin, *supra*, Pleading, §§ 26, 31, 361, 362, 369.)[4]

Of significance here, "[t]he same act may be both a breach of contract and a tort. Even where there is a contractual relationship between parties, a cause of action in tort may sometimes arise out of the negligent manner in which the contractual duty is performed . . . ." (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 3, p. 2305.) Conversely, where a contract gives rise to a duty of care, negligence in the performance of the duty may give rise to a cause of action for breach of contract. (See 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, §§ 119-122.) When such a hybrid cause of action arises, the plaintiff may pursue both legal theories of recovery until an occasion for an election of remedies arises. (See e.g. *Steiner* v. *Rowley* (1950) 35 Cal.2d 713 [221 P.2d 9]; see also 5 Corbin, Contracts, (1964) § 1019, pp. 116-117 ["There has been little discussion as to which rule should be applied in actions that may be regarded as either in tort or in contract; if there is a difference the one that is more favorable to the injured party should be applied."].) However, where the *remedies* sought are inconsistent, a pleading should segregate the allegations requisite for each theory in distinct counts. (See *ibid.*; 4 Witkin, Cal. Procedure, *supra*, § 363.)

■ Here, the allegations of Perry's complaint, while compacted in a single count, are adequate to tender both the tort and contract claims for

which measures the required setback in feet. If the legal appropriateness of the measure is put in issue (e.g., "feet" oddly enough is not to be given its English meaning), a legal issue is tendered. Otherwise, a factual issue is tendered. In either case the "ultimate fact" of measurement ("feet") may be viewed either as a legal problem (the English meaning of "feet" is not the measure) or a factual problem (how many "feet" was the setback?), or both. The conceptual distinction between the measure and the measured is frequently missed. Thus, a leading treatise says that "[p]hilosophically speaking, the tripartite distinction between conclusions of law, ultimate facts, and evidence represents three different levels of generality." (7 California Practice (2d ed. 1981) Form and Manner of Alleging Facts, § 866, p. 443.) Philosophically or legally speaking, that is not the case. Something is evidence of something (else) only by virtue of a rule. The something else, an "ultimate fact," must be viewed both as a fact (event) to be proved and as an embedded rule by which its materiality is to be measured. An "ultimate fact" takes conceptual sustenance from both, as the example demonstrates. The quote is right in one respect. Characterizing an assertion in a pleading as a conclusion of law reflects the determination that the level of factual detail set forth is too general to provide notice of the substance of the plaintiff's claims. "So regarded, the proscription against pleading of conclusions of law is actually a manifestation of the policy of ensuring fair notice to the defendant by requiring the plaintiff to provide more information with regard to his claim than the mere final and ultimate conclusion which the court is asked to make in deciding the case in favor of the plaintiff." (*Id.,* at pp. 443-444.)

4 " 'It has been well established in this state that if the cause of action arises from a breach of a promise set forth in the contract, the action is ex contractu but if it arises *from a breach of duty growing out of the contract* it is ex delicto. . .' " (*Eads* v. *Marks* (1952) 39 Cal.2d 807, 811 [249 P.2d 257]; orig. italics; see also Gilmore, The Death of Contract (1974) pp. 91-92.)

relief. (See *L. B. Laboratories, Inc.* v. *Mitchell* (1952) 39 Cal.2d 56, 59-61 [244 P.2d 385]; c.f. *Weaver* v. *Bank of America* (1963) 59 Cal.2d 428, 432 [30 Cal.Rptr. 4, 380 P.2d 644]; *Frazier* v. *Metropolitan Life Ins. Co.* (1985) 169 Cal.App.3d 90, 100-102 [214 Cal.Rptr. 883]; 4 Witkin, Cal. Procedure, *supra*, Pleading, §§ 369-372.) ■ Defendants argue that the allegations cannot support a recovery for breach of contract because Perry failed to amend the complaint as she asserted she would to append the written listing agreement. The omission is not dispositive.

Usually, a written contract is pleaded by alleging its making and attaching a copy which is incorporated by reference. (See 4 Witkin, Cal. Procedure, *supra*, at § 467.) However, a written contract can also be pleaded by alleging the making and the substance of the relevant terms. (*Id.,* at § 468.) Here Perry alleged the nature of the contract as one engaging defendants as agents for purposes of selling her residence. The purpose of the specific pleading of a written contract requirement is to permit the defendant to demur to the breach of contract claim based upon the construction of the text of the contract, a question of law unless extrinsic facts bearing upon meaning are alleged. (See *Hillsman* v. *Sutter Community Hospitals* (1984) 153 Cal.App.3d 743, 749-750 [200 Cal.Rptr. 605].)

The pleading should be legally sufficient to put the defendant upon notice of the multiple theories of liability. As we have shown, it is. We deem the complaint adequate to raise the contract claim. (See *L. B. Laboratories, Inc., supra,* at pp. 59-61; cf. *Chelini* v. *Nieri* (1948) 32 Cal.2d 480, 486 [196 P.2d 915].)

■ Defendants' central argument concerning the pleading is that, because it alleges that they were negligent, it must present only a legal theory in tort. This argument is fundamentally flawed. It selects the means of breach of contract as the determinant of its legal form. If the contract theory is negligence in the performance of contractual obligations, the allegation of negligence is integral to the statement of a cause of action for breach of contract. Moreover, even if the allegation of negligence were extrinsic to the contract cause of action, it does not follow that an extrinsic allegation destroys an otherwise complete set of allegations that state such a cause of action.

■ The allegation of negligence is not an election of a tort remedy. An election does not occur by the assertion of an inconsistent allegation, but by the acceptance of an actual benefit from an alternative theory which would render unfair continued pursuit of the alternative. (See 3 Witkin, Cal. Procedure, *supra*, Actions, §§ 131-142.) Defendants have not identified any

such benefit. (See *Langley* v. *Pacific Gas & Elec. Co.* (1953) 41 Cal.2d 655, 662-663 [262 P.2d 846].)

### C.

██ Defendants make no argument which identifies a benefit received by Perry peculiar to the tort remedy that warrants estoppel to pursue the contract remedy of attorney's fees. From all that appears the damages that Perry received would be the same whether the theory were contract or tort. Perry did not pursue nor, consequently, did the jury award, damages for personal injuries, a characteristic tort remedy. (See *O'Neil* v. *Spillane* (1975) 45 Cal.App.3d 147, 158-159 [119 Cal.Rptr. 245]; cf. *Allen* v. *Jones* (1980) 104 Cal.App.3d 207, 211 [163 Cal.Rptr. 445].) Rather, plaintiff was awarded damages measured by the loss attributable to defendant's failure to embody all of the terms of the sale agreement in the written instrument. As instructed, the jury was told that "[i]n calculating the damage to plaintiff for her loss of property, the value of such property to her should be the value of such property, less any benefits actually received by her." Here, this measures the damages caused by the breach of the agreement to competently assist Perry in the sale of her house, the uncompensated value of Perry's property. This is a contract measure of damages. "The basic object of damages is *compensation,* and in the law of contracts the theory is that the party injured by breach should receive as nearly as possible the equivalent of the benefits of performance." (1 Witkin, Summary of Cal. Law (8th ed. 1974) Contracts, § 637, p. 541 [citations omitted].)

### D.

Defendants principally rely upon inapposite authority to support their position. They cite various cases that have denied an attorney's fees award under Civil Code section 1717 where the prevailing party has recovered on a legal theory of fraud in the inducement of a contract. (See e.g. *Stout* v. *Turney* (1978) 22 Cal.3d 718, 721-722, 730 [150 Cal.Rptr. 637, 586 P.2d 1228]; *Walters* v. *Marler* (1978) 83 Cal.App.3d 1, 27-28 [147 Cal.Rptr. 655]; *McKenzie* v. *Kaiser-Aetna* (1976) 55 Cal.App.3d 84 [127 Cal.Rptr. 275].)[5] This line of case law is based on the rationale that section 1717 is only

---

[5] The apparent tension between this line of cases and the case law declaring that negligence can give rise to a hybrid tort/contract cause of action is discussed at length in 3 Witkin, California Procedure, *supra,* Actions, sections 119, 121-122. *Witkin* argues that the cases upon which defendants rely are ill considered. We have no occasion to consider whether these cases have been eroded by the subsequent evolution of the doctrine of hybrid tort/ contract causes of action. (Compare e.g. *DeMirjian, post,* with *Klein* v. *Benaron* (1967) 247 Cal.App.2d 607 [56 Cal.Rptr. 5].) Prudence counsels that the holdings of these cases be limited to the remedial contexts in which they arose.

meant to establish reciprocity of provisions for attorney's fees for enforcement of the contract. (See *McKenzie, supra,* at pp. 89-90.) An action premised on fraud in the inducement seeks to avoid the contract rather than to enforce it; the essential claim is "I would not have entered into this contract had I known the truth." The duty not to commit such fraud is precontractual, it is not an obligation undertaken by the entry into the contractual relationship.

This distinction is presaged at the outset in *McKenzie v. Kaiser-Aetna, supra*: "The three theories of recovery [at issue in *McKenzie*] were thus not merely the same cause of action under different guises. It is *thus* necessary to determine whether all those causes of action were 'action[s] on [the] contract,' as that phrase is used in Civil Code section 1717." (55 Cal.App.3d at p. 89, [italics added].) We have no quarrel with the proposition that a cause of action does not warrant a recovery under Civil Code section 1717 *merely* because a contract with an attorney's fees provision is part of the backdrop of the case. However, that is not the case here; the trial court could reasonably determine from the pleading that the defendants' negligence occurred in the course of performance of the contract and was a direct breach of its *contractual* obligations. (See Cal. Real Property Sales Transactions (Cont.Ed.Bar 1981) §§ 2.10, 2.100.)

## II

Defendants shift gears in their reply brief with the assertion that even if Perry's complaint did set forth a claim of negligent failure to perform a contractual duty, such allegations only sound in tort and not in contract. This claim is refuted in the foregoing discussion and citation of authorities. Defendants' argument is bottomed on various older cases (e.g. *DeMirjian v. Ideal Heating Corp.* (1949) 91 Cal.App.2d 905 [206 P.2d 20]; *Williamson v. Pacific Greyhound Lines* (1944) 67 Cal.App.2d 250 [153 P.2d 990]) which have held that negligence which is also a breach of contract should be treated as a tort action, regardless of plaintiff's remedial theory, for purposes of ascertaining venue, availability of attachment, or statute of limitations. We deem these cases inapposite; hence, the argument is unpersuasive.

We need not ascertain the present merit of the holdings of these cases. Whatever the warrant for penetrating the guises of the cause of action for the particular purposes there in issue, to extrapolate such holdings to this context is unwarranted. The distinction drawn in those cases between the contractual or delictual nature of the action is only of importance with respect to the matters in issue. (Cf. *L. B. Laboratories, Inc., supra,* 39 Cal.2d at p. 62.) These cases cannot mean that the plaintiff, injured by negligent failure to perform a contractual duty, has no remedy on a breach of con-

tract theory. If that were so the established doctrine of alternative tort/contract remedies would be utterly meaningless. (See e.g. *Acadia, California, Ltd.* v. *Herbert* (1960) 54 Cal.2d 328, 336 [5 Cal.Rptr. 686, 353 P.2d 294], an act that constitutes a breach of contract may also be tortious and if so plaintiff could recover "either in contract or in tort.")

Defendants do not claim that the matter before us is one of jurisdiction, venue, prejudgment attachment, or statute of limitations, which distinguished the prior cases. The question is whether plaintiff may pursue a breach of contract theory of remedy when defendants have negligently failed to adequately perform a contractual undertaking. Such an action is one to enforce the provisions of the contract. For the reasons given, we hold that when the prevailing plaintiff in such an action has not elected a distinctive *remedy* in tort, such an action may be, and here is, "on a contract" within the meaning of section 1717.

## DISPOSITION

The order denying defendants' motion to tax costs is affirmed.

Evans, Acting P. J., and Sims, J., concurred.