900 F.2d 262
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 
 Patrick FITZSTEPHENS; Donene Fitzstephens; Barbara
Fitzstephens, Plaintiffs-Appellees,
v.
CENTURY 21 REAL ESTATE CORP., et al. Defendant,
and
Philip M. Schafer, Defendant-Appellant.
 No. 88-15636.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 14, 1990.
Decided April 6, 1990.
 Before CHOY, TANG and BEEZER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Philip M. Schafer, P.C. ("Schafer") appeals the district court's denial of his motion for attorney's fees. He argues that the suit brought by the appellees, Patrick Fitzstephens, Donene Fitzstephens and Barbara Fitzstephens ("the Fitzstephens"), was an "action on a contract" and that having successfully defended that suit he is therefore entitled to attorney's fees under Cal.Civ.Code Sec. 1717. We affirm.
 
 
 3
 * The Fitzstephens purchased a liquor store in late 1986-early 1987 from Donald and Gladys Sanders ("the Sanders"). Schafer was retained by the Sanders to draft certain documents pertaining to the sale, act as neutral escrow holder for certain aspects of the sale, and otherwise give the Sanders the benefit of his legal advice. He had acted as their counsel for over ten years on a variety of legal matters.
 
 
 4
 The Fitzstephens and Sanders entered into a purchase contract which specified that Schafer would handle all legal procedures, including escrow, bulk sales, and sales tax issues, and would draft sales and securities agreements. Legal fees and costs were to be "split 50/50 buyers and sellers." The Fitzstephens claim they were never told that Schafer had a prior attorney-client relationship with the Sanders. [See ER 63, Memorandum of Opinion and Order, at 2.]
 
 
 5
 As agreed, Schafer drafted the sales documents, including a document entitled "Agreement with respect to Sale of Some Assets of Last Chance Liquors, Inc." That document included the following provision:
 
 
 6
 BUYER will reimburse SELLER one-half ( 1/2) of the fees and costs of SELLER'S attorneys, who are SCHAFER, COCHRAN & FOLLETT, for the preparation of sale documents, corporate resolutions, escrow services, liquor license transfer application, etc. Notwithstanding BUYER'S agreement to pay one-half ( 1/2) of said fees, it is acknowledged that SCHAFER, COCHRAN & FOLLETT represent SELLER only and BUYER is advised it is in his best interest to retain his own counsel.
 
 
 7
 [ER 42 at 8] (emphasis added). It also provided for attorney's fees in the event of litigation. [Id. at 12.]
 
 
 8
 Schafer transmitted these documents to the parties' broker, Arlene Spann, who in turn gave the documents to the parties. The Fitzstephens requested certain changes to these agreements, described in a letter from Spann to Schafer, but made no mention of the above quoted paragraph. Schafer made the requested changes and sent the amended documents to the Fitzstephens, in care of Spann. In a cover letter, Schafer specified that "where it was consistent with my advice to my clients, I have made changes in documents." [ER 63 at 3] (emphasis added by district court).
 
 
 9
 The day before this letter, Schafer had apparently met with the Fitzstephens at his office to review the documents. [Id.]
 
 
 10
 The closing occurred several days later. The Fitzstephens alleged that the documents were thrust in front of them so quickly that they were forced to sign the documents without reading them or having them explained. However, they had previously reviewed at least draft versions of the documents. Schafer was not present at the closing. [Id.]
 
 
 11
 In addition to drafting the agreement for the sale of the liquor store, Schafer also wrote to the California Department of Beverage Control on behalf of the Fitzstephens and prepared and had published their Notice of Intended Bulk Transfer, as required by the California Uniform Commercial Code. [Id. at 4.]
 
 
 12
 On July 21, 1987, the Fitzstephens filed a complaint against the Sanders, the realtors, and the accountant involved in the transaction, as well as Schafer. They based their request for damages upon alleged "fraud and deceit, negligence, intentional misrepresentations, negligent and/or intentional breaches of professional and/or special fiduciary duties imposed under the laws of the state of California, as well as other state theories of recovery." The Fitzstephens alleged that the Sanders had misrepresented the condition of the property, the liquor store's past profitability, and the value of their inventory. They alleged that the other defendants had breached various duties owed to them. [See, ER 1, Complaint.]
 
 
 13
 The Fitzstephens sought damages from Schafer for: (1) professional negligence, (2) failure to disclose conflict of interests, (3) intentional breach of professional duty to declare conflict after discovery of incompatible interests of clients, and (5) breach of fiduciary duty. They argued that an attorney-client relationship arose out of the original purchase agreement entered into by the Fitzstephens and the Sanders, which specified legal work Schafer was to perform for them and stated that the fees would be split equally between them. Although Schafer was not a party to its terms, the Fitzstephens alleged that he accepted its terms when he began performing the duties specified in it.
 
 
 14
 The district court rejected the Fitzstephens' contentions, holding that there was no basis for an attorney-client relationship between Schafer and the Fitzstephens. It also held that Schafer did not owe them any other duty of care. Therefore, it granted Schafer's motion for summary judgment on July 1, 1988.
 
 
 15
 On September 13, 1988, Schafer filed a motion for attorney's fees under Cal.Civ.Code Sec. 1717. The district court denied this motion by an order entered on October 18, 1988. His motion for reconsideration was denied by an order entered on November 18, 1988. Schafer filed a notice of appeal of the first order on November 16, 1988 and an amended notice of appeal with respect to the second order on December 5, 1988.
 
 II
 
 16
 The decision of a district court with regard to attorney's fees is generally reviewed for an abuse of discretion. Lange v. Pennsylvania Mutual, 843 F.2d 1175, 1184 (9th Cir.1988).
 
 III
 
 17
 Schafer argues that the district court abused its discretion in denying his motion for attorney's fees under Cal.Civ.Code Sec. 1717. This section provides:
 
 
 18
 (a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the prevailing party, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements.
 
 
 19
 (Emphasis added).
 
 
 20
 Schafer argues that the district court mischaracterized the Fitzstephens' case as one founded in tort rather than contract. He contends that legal malpractice claims sound in both tort and contract. In such circumstances, he argues, the action suffices as one that is "on a contract" under the meaning of Sec. 1717. This argument fails.
 
 
 21
 "[A] cause of action does not warrant a recovery under Civil Code section 1717 merely because a contract with an attorney's fees provision is part of the backdrop of the case." Perry v. Robertson, 247 Cal.Rptr. 74, 80 (App.1988) (emphasis in original). Instead, the action must actually be "on a contract." California courts have used this language interchangeably with "breach of contract." See Neel v. Magana, Olney, Levy, Cathcart & Gelfand, 98 Cal.Rptr. 837, 840 (1971).
 
 
 22
 Although Schafer argues that it is sufficient that the claims the Fitzstephens raised merely had some contract element (i.e., as the origin of the duty that was tortiously breached), the cases he cites for support actually involved acts that were both torts and breaches of contract. See Perry, 247 Cal.Rptr. at 75; Bruckman v. Parliment Escrow Corp., 235 Cal.Rptr. 813, 817 (App.1987). "When such a hybrid cause of action arises, the plaintiff may pursue both legal theories of recovery until an occasion for election of remedies arises." Perry, 247 Ca.Rptr. at 78.
 
 
 23
 For example, in Perry, the alleged wrong complained of constituted both a tort and a breach of contract. The court held that:
 
 
 24
 [t]he allegations of [the plaintiff's] complaint while compacted in a single count, [were] adequate to tender both the tort and contract claims for relief.... [t]he trial court could reasonably determine from the pleading that the defendants' negligence occurred in the course of performance of the contract and was a direct breach of its contractual obligations.
 
 
 25
 247 Cal.Rptr. at 79-80 (emphasis in original). Since the remedy he requested--damages measured by the amount lost by a drafting error--were the same under either theory, the plaintiff was not required to elect a remedy prior to his request for attorney's fees. However, in requesting attorney's fees as costs available under the contract, he thus manifested an election to treat the action as one in contract. Id. at 75.
 
 
 26
 The Fitzstephens did not include breach of contract claims in their pleadings. Rather, they alleged that the agreements between the Sanders and themselves created an attorney-client relationship between Schafer and themselves and/or otherwise gave rise to a duty of care. Their claims allege that Schafer tortiously violated this duty. In fact, California courts have held that, although the attorney-client relationship itself usually arises from a contract, Fox v. Pollack, 226 Cal.Rptr. 532, 534 (App.1986),
 
 
 27
 the cause of action most commonly brought for an attorney's breach of professional duty to a client sounds more in tort than in contract, and the elements required for successful prosecution of such an action are stated in terms of negligence, a tort, rather than in contractual terms.
 
 
 28
 Purdy v. Pacific Auto. Ins. Co., 203 Cal.Rptr. 524, 533 (App.1984).
 
 
 29
 Further, the Fitzstephens requested damages for emotional distress, as well as punitive and exemplary damages, rather than contract damages such as the difference between the actual market value of the property they purchased and the price they paid for it.
 
 
 30
 The fact that the Fitzstephens also referred to Schafer's role as "escrow holder" as a source of a fiduciary duty does not alter the nature of their claims. Bruckman is of little support to Schafer. In both his opening statement and his trial brief, Bruckman's counsel clearly articulated his breach of contract claims. 235 Cal.Rptr. at 817. Unlike Bruckman, the Fitzstephens did not clearly make out a breach of contract theory for their claims. Therefore, their suit cannot be said to have been an "action on a contract." Consequently, Schafer is not entitled to attorney's fees under Sec. 1717.
 
 
 31
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3