Filed 5/30/25 Wilmot v. First American Title Co. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ELIZABETH WILMOT, | B322298 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. Nos. JCCP4751, BC370141) |
| v. | |
| FIRST AMERICAN TITLE CO., | ORDER MODIFYING OPINION |
| Defendant and Respondent. | [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed on May 2, 2025, is modified as follows:

On page 21, "not" is inserted between "The allegation, however, does" and "assert the services provided lacked value, or that FATCO breached a fiduciary duty, rather than just a contractual term, by charging the fee."

There is no change in the judgment.

_____
MOOR, J.            BAKER, Acting P. J.           KIM (D.), J.

Filed 5/2/25  Wilmot v. First American Title Co. CA2/5 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ELIZABETH WILMOT,<br><br>        Plaintiff and Appellant,<br><br>        v.<br><br>FIRST AMERICAN TITLE CO.,<br><br>        Defendant and Respondent. | B322298<br><br>(Los Angeles County Super. Ct. Nos. JCCP4751, BC370141) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Maren E. Nelson, Judge.  Reversed and remanded.

Shernoff Bidart Echeverria and Michael J. Bidart; Gupta Wessler, Deepak Gupta, Gregory A. Beck, Robert D. Friedman, Ameze Belo-Osagie, and Jennifer D. Bennett; Freidman & Rubin and Richard H. Friedman; The Bernheim Law Firm and Steven J. Bernheim for Plaintiff and Appellant.

Dentons US, Ronald D. Kent, Joel D. Siegel, Gary Roberts, and Doug Janicik for Defendant and Respondent.

First American Title Company (FATCO) served as plaintiff and appellant Elizabeth Wilmot's (Wilmot's) escrow agent for a real property purchase in 2004.[1]  Years later, Wilmot sued FATCO asserting various causes of action all with the same gist: FATCO improperly charged her a $125 loan tie-in fee that was unauthorized because FATCO had not duly filed the rate with the Department of Insurance.  After multiple rounds of demurrers—the last of which was partially granted—Wilmot elected to dismiss her remaining claims to appeal the trial court's decision sustaining FATCO's demurrer as to her causes of action for breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, negligence, unjust enrichment, and money had and received.  We consider whether the operative complaint sufficiently alleges any of these claims even though the property purchase agreement and escrow instructions were not attached to any of the complaints or recited verbatim in the complaints themselves.

---

[1]  Though Wilmot named three First American entities as defendants in her earlier complaints (First American Title Company, First American Title Insurance Company, and First American Corporation), only FATCO remained a defendant as of the last iteration of the complaint, and Wilmot does not challenge the dismissal of the other First American entities on appeal.  As a result, we describe the allegations as they pertain to FATCO only.

I. BACKGROUND

### A. *Background Facts*

Wilmot purchased a home in Moreno Valley, California in or around 2004. FATCO served as the escrow agent for Wilmot's transaction.

FATCO is a controlled escrow company and required to file a schedule of rates with the Department of Insurance for all services it performs. FATCO's schedule of rates in effect at the relevant time did not include a rate for a loan tie-in fee. FATCO nevertheless charged Wilmot a $125 loan-tie in fee in connection with her home purchase.[2] Wilmot did not discover facts relating to the charging of what she would later contend was the improper loan tie-in fee until or about March 2007, when she attended a social event and met an attorney who mentioned FATCO when discussing the types of cases he was handling.

### B. *The Initial Iterations of the Complaint*
### 1. *Original and first amended*

Wilmot and her co-plaintiff Jason Munro's original complaint, filed in April 2007, alleged ten causes of action on behalf of themselves and a putative class.[3] A first amended complaint was filed later the same year. The first amended complaint alleged causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of

---

[2] FATCO did not have a filed rate for a loan tie-in fee until February or March 2007.

[3] Munro, who was a named plaintiff through the Fourth Amended Complaint, was not a named plaintiff in the Fifth Amended Complaint and is not a party to this appeal.

fiduciary duty, negligence, fraud, constructive fraud, unjust enrichment, violation of the Consumer Legal Remedies Act (CLRA), violation of the Unfair Competition Law (UCL), and declaratory relief.

FATCO demurred to all ten causes of action and argued, among other things, that Wilmot had not sufficiently alleged her breach of contract claims because the complaint did not adequately describe the terms of any written contract or the ways in which the contract was allegedly breached. The trial court sustained the demurrer with leave to amend as to all but Wilmot's cause of action for fraud.

### 2. Second amended

The subsequently filed Second Amended Complaint (SAC) alleged nine causes of action: breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, negligence, fraud, constructive fraud, restitution, violation of the CLRA, and violation of the UCL and the False Advertising Law (FAL). The breach of contract claim (which figures prominently in this appeal) alleged Wilmot and putative class members entered into a contract with FATCO pursuant to which FATCO "promised to provide escrow services and title insurance to plaintiffs and . . . to their lenders."

Wilmot alleged the contract was written or, in the alternative, implied-in-fact. As to the alleged written contract, she alleged it was "evidenced by documents such as: (a) the Residential Purchase Agreement [a]nd Joint Escrow Instructions dated January 8, 2004, providing that the buyer (Wilmot) and the seller shall each pay their own escrow fee; (b) the Supplemental Escrow Instructions thereto, dated January 13,

4

2004 . . . providing that 'Upon Close of Escrow, Escrow Holder is instructed to disburse in accordance with the executed "Estimated Settlement" Statement without further instruction from the parties thereto'; (c) the 'Escrow General Instructions' incorporated by reference into the Supplemental Escrow Instructions; (d) the letter dated January 13, 2004 to Wilmot from Jean O'Neill 'Escrow Officer' for 'First American Title Company,' stating among other things that 'First American Title Company will be handling your transaction . . .' and purporting to enclose among other things 'General Provisions for First American [T]itle Company'; (e) the letter dated January 12, 2004, transmitting the Supplemental Escrow Instructions from Jean O'Neill . . . to Wilmot's agent, and stating among other things 'Thank you for selecting First American Title Company to process your escrow. We have accepted the agency obligation as Escrow holder and look forward to working with you towards a smooth closing'; (f) the Buyer's Estimated Settlement Statement . . . estimating an 'Escrow Fee' to be paid to 'First American Title Company' in the amount of $125 . . .'; (g) the Estimated Settlement Statement purportedly prepared by 'First American Title Company' showing the same information . . . as . . . shown on the Buyer's Estimated Settlement Statement; and (h) the HUD-1 Settlement Statement . . . representing under the section for 'Title Charges' on line 1113 a 'Loan Tie In Fee to First American Title Company' in the amount of $125; and (e) receipts in the name of 'First American Title Company' for deposits of earnest money deposit, loan proceeds, and additional closing costs." Wilmot alleged the referenced documents "identify [FATCO] as the escrow agent and therefore the party to the contract . . . ."

5

Wilmot also alleged in the alternative that the agreement was implied from the conduct, situation, or mutual relation of the parties, and that FATCO promised to act and acted as the escrow company. Wilmot additionally alleged that applicable laws in existence when the contract was made formed a part of the contract as though expressly referred to and incorporated therein, and thus, one material term of the contract was that FATCO would charge Wilmot only those fees allowed under California law and its schedule of fees—including the promise not to charge a loan tie-in fee because no such fee had been included in its filed schedule.

Wilmot alleged FATCO breached the contract and the implied covenant of good faith and fair dealing, by, among other things, charging a loan tie-in fee even though FATCO was obligated not to do so. Wilmot alleged she performed her obligations under the contract by paying insurance premiums and escrow and title fees. She further alleged she had been damaged by the breaches by loss of money in paying the unlawful fees.

The breach of fiduciary duty cause of action alleged FATCO owed Wilmot a fiduciary duty that required it to act in the utmost good faith and in her best interests. Wilmot alleged FATCO breached that duty by, among other things, charging a loan tie-in fee even though there was no filing with the Department of Insurance authorizing that charge until March 2007.

The negligence cause of action alleged FATCO had a duty to act as a reasonable and prudent escrow holder, title company, and title insurer, and that California law imposed upon it a duty not to charge a loan tie-in fee when the fee was not filed.

6

Wilmot alleged that FATCO breached its duty by charging the fee, and that she was damaged by the breach.

FATCO demurred to Wilmot's Second Amended Complaint.[4] The trial court sustained the demurrer to the contract-based causes of action without leave to amend because it believed none of the documents Wilmot identified as evidencing the terms of a written contract in fact did so. The trial court acknowledged that Wilmot expressly alleged FATCO was a party to her property purchase agreement but the court found that unpersuasive because FATCO contested the assertion and Wilmot had not attached a copy of the purchase agreement to the SAC. In the trial court's view, the failure to attach the purchase agreement made it impossible to know whether FATCO was in fact named as the escrow agent and whether the purchase agreement contained any provisions obligating FATCO to perform in any manner such that it could be construed as a party to the contract.[5] The court believed escrow instructions could not serve as a basis for the breach of contract claim for the same reason: Wilmot had not attached a copy, pled the instructions'

[4] Neither party made the demurrer a part of the record on appeal prior to the completion of briefing.

[5] The trial court recognized Wilmot was not legally required to attach a copy of the contract or recite its terms verbatim. But the court believed that, to plead the contract's legal effect, she was required to allege the substance of the contract's relevant terms—which the court believed she had not done. In particular, the trial court stated Wilmot had not identified any obligations of FATCO under the purchase agreement and reasoned that the mere presence of FATCO's name in the contract did not make it a party.

7

terms verbatim, or adequately pled their legal effect.  The trial court further concluded Wilmot had not alleged the existence of an implied-in-fact contract either because she did not allege any conduct, situation, or mutual relations evidencing an intent to promise.

Citing law that an escrow agent's fiduciary duties are limited to strict compliance with the escrow instructions, the court sustained FATCO's demurrer to the breach of fiduciary duty claim based on its finding that Wilmot did not allege FATCO failed to follow any escrow instructions.  The court acknowledged an escrow agent can owe a fiduciary duty to disclose knowledge acquired in the course of agency under certain circumstances, but it found the SAC was still deficient because none of the alleged breaches stated FATCO failed to disclose such knowledge.  The court granted leave to amend on the breach of fiduciary duty claim, however, to permit Wilmot to plead facts concerning an alleged failure to disclose.

The court sustained the demurrer on the negligence claims without leave to amend, finding Wilmot had not identified a legally cognizable duty that FATCO owed to her.

### 3.   *Third amended*

Wilmot's Third Amended Complaint made changes to her cause of action for breach of fiduciary duty.  She alleged FATCO, as escrow agent, owed her a fiduciary duty that required it to exercise reasonable care and diligence in carrying out the escrow instructions, to disclose knowledge acquired in the course of the agency, and to act in good faith and the best interests of Wilmot and the class.  She alleged FATCO breached its duty by failing to

8

disclose certain facts, including the fact that it had not filed a loan tie-in rate with the Department of Insurance.

FATCO apparently demurred to the Third Amended Complaint (the appellate record does not include the demurrer). A minute order indicates the demurrer was overruled and the court would allow the "'loan tie in fee' allegation to stand."

Around the same time, Wilmot moved to certify a loan tie-in fee class and the trial court denied the motion. Wilmot appealed, and we affirmed except as to Wilmot's claim for violation of the UCL's unlawful and unfair prongs concerning a subclass of consumers whose transactions could not have been mislabeled as involving a loan tie-in fee. (*Wilmot v. First American Title Co.* (Jan. 31, 2020, B289375) [nonpub. opn.].) On remand, the trial court certified a UCL cause of action under the unfair and unlawful prongs.

### 4. *Fourth amended*

In early 2021, Wilmot filed a motion to amend her complaint to clarify her breach of fiduciary duty claim was based on FATCO's conduct, not any alleged fraud, and to add a claim for money had and received. The trial court denied the motion as to the proposed amendments to the breach of fiduciary duty claim, deeming it improper because the court had previously ruled that to survive the demurrer to that claim in the Second Amended Complaint, Wilmot had to allege a fraud-based claim rather than a conduct-based claim. The court, on the other hand, granted Wilmot leave to add a common count for money had and received on certain conditions, including the condition that the claim was to be based on the allegation that FATCO charged

rates for services not filed with the Insurance Commissioner when such filing was required.

Wilmot thereafter filed a fourth amended complaint alleging causes of action for fraud, constructive fraud, unjust enrichment, violation of the CLRA, violation of the UCL, and money had and received.[6] In her unjust enrichment claim, Wilmot alleged FATCO benefited from and had been unjustly enriched by collecting money to which it was not entitled, including the loan tie-in fee, Wilmot was entitled to recover the amounts wrongfully collected, and Wilmot had suffered damages. In her claim for money had and received, Wilmot similarly alleged FATCO charged rates for loan tie-in services that were not filed with the Department of Insurance as required, and that FATCO thus received money that was intended to be used for Wilmot's benefit, but the money was instead used to charge an unlawful loan tie-in fee.

FATCO demurred to the unjust enrichment and money had and received causes of action in the Fourth Amended Complaint.[7] Relying on *Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583, the trial court found the unjust enrichment claim failed because the claim was predicated on a violation of the Insurance Code for which there was no private right of action. The court

---

[6] The Fourth Amended Complaint also included the causes of action to which a prior demurrer had been sustained. Those causes of action included language stating "[deleted by court order]" before every relevant paragraph.

[7] The demurrer is not included in the appellate record, but the trial court's ruling on the demurrer recites the causes of action targeted by the demurrer.

concluded the common count for money had and received was being used as an alternate way to seek the same recovery as that sought in the unjust enrichment cause of action and failed for that reason.

### 5. *Fifth amended*

Wilmot's subsequently filed Fifth Amended Complaint alleges causes of action for fraud, constructive fraud, and violations of the CLRA and UCL. After the filing of this operative complaint, however, Wilmot requested to voluntarily dismiss these claims with prejudice (including those claims as to which a class had been previously certified) so she could immediately appeal the court's ruling sustaining demurrers to her contract claims and other causes of action. The court entered the dismissal as requested and this appeal ensued.

## II. DISCUSSION

We hold the trial court erred in sustaining the demurrer to Wilmot's claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Wilmot's allegations regarding the existence of a written or implied-in-fact contract between her and FATCO, pursuant to which FATCO agreed to provide escrow services and (as imputed by law) agreed to charge only rates it had duly filed with the Department of Insurance, sufficiently state a claim at the pleading stage.

The trial court, however, did not err in sustaining the demurrers to any of Wilmot's other causes of action. Wilmot never stated a proper claim for breach of fiduciary duty because the fiduciary duties of an escrow agent are limited and Wilmot did not allege, even after multiple opportunities, the breach of

11

any escrow instruction or any failure to disclose.  Wilmot did not state a proper claim for negligence because she did not allege a breach of the duty of reasonable care and failed to establish the principles of negligence per se apply based on the allegations actually pled.  Wilmot's unjust enrichment and money had and received claims—which are, at bottom, requests for restitution—are deficient because the claims do not deny the existence of a written contract and because Wilmot's breach of contract theory provides a remedy at law that makes equitable relief (restitution) unnecessary.

### A.   Adequacy of the Record on Appeal[8]

The Appellant's Appendix submitted by Wilmot includes her original complaint, First Amended Complaint, Second Amended Complaint, Fourth Amended Complaint, and Fifth Amended Complaint.  It includes her opposition to FATCO's demurrer to the Second Amended Complaint (but not the demurrer itself or other briefing), the order regarding the demurrer to the Second Amended Complaint, a minute order regarding the demurrer to the Third Amended Complaint (but not the Third Amended Complaint, the demurrer, or any associated briefing), the order sustaining the demurrer to the Fourth Amended Complaint (but, again, not the demurrer or any

---

[8]   Wilmot submitted a Motion for Judicial Notice asking this court to judicially notice portions of legislative history regarding provisions of the Insurance Code.  The motion is denied.  (*Salmon Protection & Watershed Network v. County of Marin* (2012) 205 Cal.App.4th 195, 209, fn. 13; see also *In re Marriage of Wiese* (2024) 102 Cal.App.5th 917, 937, fn. 13.)

12

associated briefing), and the order granting voluntary dismissal. FATCO filed a Respondent's Appendix that includes, in pertinent part, Wilmot's opposition to the demurrer to the Third Amended Complaint, Wilmot's motion for leave to amend to file her Fourth Amended Complaint, and the trial court's ruling on the motion for leave to amend.

After our initial review of the record was complete, we invited the parties to brief whether Wilmot had provided an adequate record for appellate review. Wilmot argued the documents she did not include in the appellate record—including all of the relevant demurrers—were omitted because they were "unnecessary" to our review. That is presumptuously incorrect. The demurrers, and associated motion papers, reveal what issues and arguments were (or were not) presented to the trial court.

Nevertheless, Wilmot also responded to our invitation by filing a motion to augment the record to cure any deficiencies. FATCO opposed the motion, arguing the request was untimely. We agree Wilmot would have done better to include these materials at the outset, but we grant the motion to augment and proceed to resolve the appeal on the merits. (*Weitz v. Yankosky* (1966) 63 Cal.2d 849, 854-855.)

> B.      *Wilmot Stated Claims for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing*

On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, we give the complaint a reasonable interpretation, and treat the demurrer as admitting all material facts properly pleaded. (*Wiseman Park, LLC v. Southern Glazer's Wine & Spirits, LLC* (2017) 16

13

Cal.App.5th 110, 116-117.) We do not assume the truth of contentions, deductions, or conclusions of law. (*Ibid.*)

"To establish a cause of action for breach of contract, the plaintiff must plead and prove (1) the existence of the contract, (2) the plaintiff's performance or excuse for nonperformance, (3) the defendant's breach, and (4) resulting damages to the plaintiff. [Citation.] 'In an action based on a written contract, a plaintiff may plead the legal effect of the contract rather than its precise language.' [Citation.]" (*Maxwell v. Dolezal* (2014) 231 Cal.App.4th 93, 97-98.)

"Usually, a written contract is pleaded by alleging its making and attaching a copy which is incorporated by reference. [Citation.] However, a written contract can also be pleaded by alleging the making and the substance of the relevant terms. [Citation.]" (*Perry v. Robertson* (1988) 201 Cal.App.3d 333, 341.)

Wilmot's Second Amended Complaint alleged she entered into a written or implied-in-fact contract with FATCO pursuant to which FATCO promised to provide escrow services to Wilmot. She alleged the written contract was "evidenced by documents" including the Residential Purchase Agreement and Joint Escrow Instructions. She alleged FATCO sent Wilmot a letter stating it had "accepted the agency obligation as [e]scrow holder." She alleged that because all applicable laws in existence when the contract was made formed a part of it, including the law prohibiting FATCO from charging rates that were not filed, a material term of the contract was the promise not to charge the loan tie-in fee, for which there was no filed rate. She alleged FATCO breached the contract by charging Wilmot the loan tie-in fee. She alleged she paid consideration in the form of escrow fees and performed all obligations she was required to perform. She

14

further alleged she was damaged by, among other things, loss of money occasioned by payment of unlawful fees.

While Wilmot's breach of contract allegations are not well crafted, they are sufficient to survive demurrer. There are allegations that she and FATCO entered into a written contract, that the primary purpose of the contract was for FATCO to provide her with escrow services, that she paid FATCO fees for those services, that the law prohibiting FATCO from charging rates that were not filed was incorporated as a term of the contract, and that FATCO breached that term. This suffices to state a claim.[9]

---

[9] FATCO specifically attacks the implied-in-fact contract claim only on two fronts. It argues Wilmot's allegations that FATCO promised to act as her escrow agent, that Wilmot paid for that service, and that FATCO charged a loan tie-in fee are insufficient because "those are no different than the *same* bare-boned allegations that Wilmot made to support her breach of express (here, written) contract cause of action." This argument obviously fails because we have concluded those express contract allegations are adequate for pleading purposes. FATCO also contends the implied-in-fact contract claim, subject to a two-year statute of limitations (not the four-year statute that applies to written contract claims) is time-barred as a matter of law. We hold to the contrary. The trial court concluded an implied-in-fact contract claim would be timely under the discovery rule and FATCO has not established that the claim is necessarily barred. (*Geneva Towers Ltd. Partnership v. City of San Francisco* (2003) 29 Cal.4th 769, 781 ["'A demurrer based on a statute of limitations will not lie where the action may be, but is not necessarily, barred. [Citation.] In order for the bar of the statute of limitations to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred.

15

FATCO advances a number of counterarguments but none is persuasive.

FATCO argues there are insufficient allegations concerning the contract or its relevant terms; FATCO believes that because Wilmot did not identify a particular document as "the" contract between the parties, she did not sufficiently allege the existence of a contract. In our view, however, the breach of written contract allegations are minimally adequate "to permit the defendant to demur to the breach of contract claim based upon the construction of the text of the contract . . . . [Citation.]"[10] (*Perry, supra,* 201 Cal.App.3d at 341.) Insofar as FATCO's complaint is that Wilmot's pleading is deficient because it alleges the contract was comprised of several documents rather than one particular document, the contention is unavailing. (E.g., *Harm v. Frasher* (1960) 181 Cal.App.2d 405, 414 ["'The rule that separate written documents between the same parties and relating to the same subject-matter as indicated by the language contained therein, *or satisfactorily proved by the circumstances under which they are executed*, are to be construed together as one transaction, has been determined by so many authorities there is no room for controversy regarding that principle'"]; *Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1331 ["'A contract may validly

---

[Citation]'"]; see also *Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 350-352.)

[10] We are concerned in this appeal with the trial court's ruling sustaining FATCO's general demurrer and therefore express no view on the viability of a special demurrer to the written breach of contract claim.

16

include the provisions of a document not physically a part of the basic contract'"].)

FATCO argues Wilmot did not allege a meeting of the minds with respect to the term requiring FATCO to comply with the Insurance Code's filed rate requirements (including section 12414.27). While Wilmot did not expressly allege a meeting of the minds, principles of law do so for her. As a general rule, parties are presumed to know and have in mind applicable laws in existence at the time of contracting. (*Swenson v. File* (1970) 3 Cal.3d 389, 393.) Because of this presumption, we also presume at the pleading stage of litigation that the parties did have a meeting of the minds as to the term.

FATCO argues Wilmot did not plead any injury caused by the alleged breach. But Wilmot alleged she was charged, and paid, a fee that FATCO was not legally permitted to charge her. Even if we assume for argument's sake that this alone is not enough to adequately plead damages, Wilmot also alleged that some FATCO offices did not charge the loan-tie in fee because they were concerned that it was unlawful, and the consumers who patronized those offices received the same escrow services Wilmot and the putative class received. While there are certainly questions of fact on these issues, Wilmot has at least alleged damages in that she was charged an amount other FATCO customers did not pay for services received.

Relying on *Villanueva v. Fidelity National Title Co.* (2021) 11 Cal.5th 104, FATCO argues Wilmot received the benefit of her bargain, despite the unfiled loan tie-in rate, in the form of the services for which she paid. The excerpt of *Villanueva* that FATCO cites as support for this benefit of the bargain proposition, however, merely describes rulings made by the trial

17

court in that case. The *Villanueva* court was careful to state the trial court's ruling on restitution was not before the Supreme Court for decision and the *Villanueva* opinion cautions that the court "express[ed] no views concerning" the ruling's correctness.[11] (*Id.* at 112 & fn. 2.)

FATCO also appears to argue Wilmot did not sufficiently allege injury because she did not plead she could and would have chosen a different escrow company if she had known the loan tie-in fee had not been filed with the Department of Insurance. The cases upon which FATCO relies for the proposition that such an allegation was necessary considered the sufficiency of a complaint to plead a UCL cause of action, not a breach of contract claim. (See, e.g., *Peterson, supra,* 164 Cal.App.4th at 1591-92; *Lagrisola v. N. Am. Fin Corp.* (2023) 96 Cal.App.5th 1178, 1184, 1189.) We do not believe such an allegation is required in the breach of contract context, and FATCO has produced no authority to the contrary.

Finally, FATCO argues Wilmot essentially seeks a forfeiture of the fee it received for its services, and asserts forfeiture is not favored by the law.[12] Whether the remedy Wilmot seeks would constitute a forfeiture is an issue of fact, as

---

[11] That is, of course, consistent with *Villanueva*'s holding that consumers can bring an action in court to challenge as unlawful rates charged by a title insurer that were not filed with the Insurance Commissioner. (*Villanueva, supra,* 11 Cal.5th at 110.)

[12] Wilmot's allegations suggest it might not be a forfeiture if refunds of the loan tie-in fee were ultimately ordered. She alleges some FATCO offices did not charge the fee but provided the same services.

is not capable of resolution on demurrer. This is underscored by the fact that none of the cases FATCO relies upon for the proposition review demurrer rulings. (See *Quatman v. McCray* (1900) 128 Cal. 285, 288 [appeal from judgment and denial of motion for new trial]; *Ballard v. MacCallum* (1940) 15 Cal.2d 439, 440 [appeal from judgment after trial]; *Chase v. Blue Cross of California* (1996) 42 Cal.App.4th 1142, 1157 [appeal from denial of motion to compel arbitration].)

Having rejected all of FATCO's counterarguments, we also reject the company's contentions regarding the implied covenant of good faith and fair dealing. FATCO's demurrer to that cause of action rises or falls on the viability of the breach of contract cause of action and, for reasons just explained, it falls.

### C. *Wilmot Did Not State a Claim for Breach of Fiduciary Duty*

"'An escrow holder is an agent and fiduciary of the parties to the escrow. [Citations.] The agency created by the escrow is limited—limited to the obligation of the escrow holder to carry out the instructions of each of the parties to the escrow. [Citations.]'" (S*ummit Financial Holdings, Ltd. v. Continental Lawyers Title Co.* (2002) 27 Cal.4th 705, 711.) "In delimiting the scope of an escrow holder's fiduciary duties . . . we start from the principle that '[a]n escrow holder must comply strictly with the instructions of the parties. [Citations.]' [Citation.] On the other hand, an escrow holder 'has no general duty to police the affairs of its depositors'; rather, an escrow holder's obligations are 'limited to faithful compliance with [the depositors'] instructions.' [Citations.] Absent clear evidence of fraud, an escrow holder's

19

obligations are limited to compliance with the parties' instructions. [Citations.]" (*Ibid.*)

Wilmot alleged FATCO breached its fiduciary duty to her and the putative class members by charging a loan tie-in fee even though it had not filed a rate for a loan tie-in fee with the Department of Insurance. Though Wilmot identified the escrow instructions as one of the documents that "evidenced" her written contract with FATCO, she did not identify any escrow instruction FATCO breached by charging the loan tie-in fee. Because an escrow agent's fiduciary duties are, in the absence of clear evidence of fraud, limited to compliance with the instructions and Wilmot has not identified any way in which FATCO did not comply with the instructions, she did not sufficiently allege a breach of fiduciary duty.

Wilmot contends the Insurance Code's prohibition against charging unfiled rates was an implied instruction within the escrow instructions. Even assuming that is a viable argument, Wilmot did not allege the relevant provisions of the Insurance Code were incorporated into the escrow instructions by operation of law. The allegation that the written contract was "evidenced" by the escrow instructions, among other documents, did not suffice to allege the Insurance Code section became escrow instructions, specifically.

Wilmot also argues that by charging the fee, FATCO breached its fiduciary duty to refrain from self-dealing. But Wilmot does not allege that FATCO performed no services in exchange for the fee, or that the fee was excessive in light of the services charged. Wilmot points to the allegation in her complaint that certain FATCO offices declined to charge the loan tie-in fee because they knew it was not a filed rate (and knew

20

they were not permitted to charge an unfiled rate). The allegation, however, does assert the services provided lacked value, or that FATCO breached a fiduciary duty, rather than just a contractual term, by charging the fee.[13]

> ### D. *Wilmot Did Not State a Cause of Action for Negligence*

"A complaint in an action for negligence must allege (1) the defendant's legal duty of care towards the plaintiff, (2) the defendant's breach of that duty, (3) injury to the plaintiff as a proximate result of the breach, and (4) damage to the plaintiff. [Citation.]" (*Jones v. Grewe* (1987) 189 Cal.App.3d 950, 954.) Wilmot alleged FATCO had a duty to act as a reasonable and prudent escrow holder, and that it had a duty imposed by California law, specifically 10 Cal. Code Regs. § 2556.1, not to charge the loan tie-in fee.

"It is . . . the duty of an escrow holder to exercise reasonable skill and ordinary diligence in its employment, and if the escrow holder acts negligently, it is ordinarily liable for any loss occasioned by its breach of duty [citation]. '[I]t is generally held that no liability attaches to the escrow holder for his failure to do something not required by the terms of the escrow or for a loss incurred while obediently following his escrow instructions.' [Citation.]" (*Axley v. Transamerica Title Ins. Co.* (1978) 88

---

[13] Wilmot does not adequately present any argument on appeal that the trial court erred in denying leave to amend this cause of action (her leave to amend arguments are directed to the breach of contract claims we have found adequate) and we accordingly do not discuss it.

Cal.App.3d 1, 9.) FATCO's general duty of care as an escrow agent was necessarily limited to the duty an escrow holder owes to the parties to the escrow, namely, compliance with specific escrow instructions—at least absent clear evidence of fraud. (*Summit, supra,* 27 Cal.4th at 711.) If FATCO could owe a greater duty of care to Wilmot under a theory of negligence than under a theory of breach of fiduciary duty, that would defeat the purpose of limiting the scope of an escrow holder's fiduciary duties to the parties to the escrow. Because Wilmot has not alleged a failure to comply with the escrow instructions or negligent compliance with the escrow instructions, she has not alleged a claim for negligence based on the escrow agent's reasonable duty of care.

Wilmot nonetheless argues she stated a valid claim for negligence under the doctrine of negligence per se. Specifically, Wilmot contends that she sufficiently stated a claim for negligence because FATCO violated Insurance Code sections 12401.7 and 12414.27, the violation injured her, the rate-filing requirements exist to protect consumers, and Wilmot was among those the legislature intended to protect in regulating escrow companies. That, however, is not what her Second Amended Complaint alleges. Rather, it alleges FATCO had a duty to Wilmot and the class members under 10 Cal. Code Regs. § 2556.1. Wilmot's appellate briefing makes no mention of the regulation and makes no attempt to explain how it, specifically, established and imposed a duty of care on FATCO.[14]

---

[14] Again, Wilmot does not adequately present any argument on appeal that the trial court erred in denying leave to amend this cause of action and we accordingly do not discuss it.

22

In any event, though Evidence Code section 669 and the theory of negligence per se provides "statutes and regulations may be used to establish duties and standards of care in negligence actions" (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 927), "an administrative agency cannot independently impose a duty of care if that authority [to create a negligence duty of care] has not been properly delegated to the agency by the Legislature" (*Cal. Serv. Station Etc. Ass'n v. Am. Home Assur. Co.* (1998) 62 Cal.App.4th 1166, 1175).  Wilmot has not established that the relevant administrative agency was duly empowered to create a duty of care in promulgating the cited regulation.  Additionally, the regulation upon which Wilmot relied in her Second Amended Complaint, 10 Cal. Code Regs. § 2556.1, was repealed operative November 23, 2007, prior to the filing of her Second Amended Complaint in 2008.

### E.    *Wilmot Did Not State Causes of Action for Unjust Enrichment and Money Had and Received*

We have held that Wilmot adequately pled a breach of contract theory of liability against FATCO for charging the loan tie-in fee.  With that holding in mind, our view of the viability of Wilmot's "unjust enrichment" cause of action is encapsulated by the discussion of a similar cause of action in *Sepanossian v. National Ready Mixed Concrete Co.* (2023) 97 Cal.App.5th 192.  The court in that case wrote:  "As an initial matter, '[t]here is no cause of action in California labeled "unjust enrichment."'  [Citation.]  Rather, an unjust enrichment claim is grounded in equitable principles of restitution.  [Citations.]  Unjust enrichment is sometimes considered ""a general principle,

underlying various legal doctrines and remedies,'" rather than a remedy itself.' [Citation.]

"Unjust enrichment is generally an inapplicable basis for restitution where the parties have an enforceable express contract, however, 'restitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason,' or 'where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct.' [Citation.] 'Common law principles of restitution require a party to return a benefit when the retention of such benefit would unjustly enrich the recipient; a typical cause of action involving such remedy is "quasi-contract."' [Citations.]

"Thus, Sepanossian's 'unjust enrichment' claim 'does not properly state a cause of action.' [Citation.] Because Sepanossian does not dispute there were express form contracts in this case, he cannot assert a quasi-contract claim for restitution based on unjust enrichment. 'Although a plaintiff may plead inconsistent claims that allege both the existence of an enforceable agreement and the absence of an enforceable agreement, that is not what occurred here. Instead, [Sepanossian's] breach of contract claim pleaded the existence of . . . enforceable agreement[s] and [his] unjust enrichment claim did not deny the existence or enforceability of [those] agreement[s]. [Sepanossian is] therefore precluded from asserting a quasi-contract claim under the theory of unjust enrichment.' [Citation.]

"More fundamentally, '[b]ecause we have found that [Sepanossian's] remedies at law are adequate' (i.e., his count alleged under the UCL), a separate claim for restitution is

24

unnecessary.  [Citation.]  'This conclusion follows from the general principle of equity that equitable relief (such as restitution) will not be given when the plaintiff's remedies at law are adequate.'  [Citation.]"  (*Sepanossian, supra,* 97 Cal.App.5th at 206-208.)

The same situation is presented here in all material respects, and we reach the same result.  Wilmot's unjust enrichment "cause of action" did not deny the existence of the contracts pled to have been breached and therefore could not assert a quasi-contract claim for restitution.[15]  In addition, and just as in *Sepanossian*, a separate claim for restitution is "unnecessary" in light of her viable contract claim.

Wilmot's common count for money had and received has the same factual predicate as her unjust enrichment claim and seeks the same relief, namely, restitution.  Because we conclude the trial court properly sustained the demurrer to the unjust enrichment cause of action, we likewise affirm the order sustaining the demurrer to Wilmot's common count for money had and received.   (See, e.g., *Berryman v. Merit Property Management, Inc.* (2007) 152 Cal.App.4th 1544, 1560.)

---

[15]   Indeed, by incorporating other paragraphs of the complaint (albeit with the deleted by court order notation), the unjust enrichment claim can be read to affirmatively plead the existence of an express contract.

DISPOSITION

The judgment of dismissal is reversed.  The cause is remanded for further proceedings consistent with this opinion. Wilmot is awarded costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, Acting P. J.

We concur:


MOOR, J.


KIM (D.), J.

26