Filed 11/20/25  Golunova v. Akhromtsev CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| VICTORIA GOLUNOVA et al.,<br><br>Plaintiffs, Cross-Defendants, and Respondents,<br><br>v.<br><br>ANN AKHROMTSEV et al.,<br><br>Defendants, Cross-Complainants, and Appellants. | A167542<br>A168855<br><br>(San Francisco City & County<br>Super. Ct. No. CGC957737) |

This litigation arises from an ultimately unsuccessful business venture.  In these consolidated appeals, defendants challenge a postjudgment order denying their request for attorney fees and costs and an order denying their motion to strike or tax costs sought by dismissed cross-defendant Andre Rychkov.  This appeal raises three main issues:  (1) did the trial court err by denying defendants attorney fees under Civil Code section 1717; (2) did the trial court err by denying defendants costs under Code of Civil Procedure[1] sections 998 and 1032; and (3) did the trial court abuse its discretion by awarding costs to

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

1

Rychkov?  For the reasons explained herein, we affirm the court's denial of attorney fees under Civil Code section 1717, but we reverse and remand the court's ruling regarding costs under sections 998 and 1032.  We also reverse and remand the court's order awarding costs to Rychkov.

## BACKGROUND

In 2014, Victoria Golunova started California Home Health Care, LLC (CHH) with the assistance of her fiancé, Igor Lyustin.[2] CHH provided medical services to clients and billed Medicare for reimbursement.

At some point, Lyustin and Daniel Akhromstev[3] began discussing Daniel joining CHH, and, in July 2015, Daniel's wife, Ann, became a member of CHH along with Golunova.  Lyustin and Daniel were silent partners who attended board meetings and helped make key decisions.

Although the CHH operating agreement designated Ann as CHH's operations manager, it was understood that Ann would not serve in that capacity.  Instead, Daniel began working at CHH, and, over time, he effectively became CHH's operations manager.

By 2017, CHH was not profitable, and it could not bill Medicare for reimbursement until it passed an inspection by the Joint Commission on Health Care Accreditation (JCAHO).

---

[2] We take these summarized facts largely from the trial court's statement of decision.

[3] Because defendants Daniel Akhromstev and Ann Akhromstev share a last name, we will refer to them herein by their first names.

2

Mariya Rychkova joined CHH as a third member with the understanding that she would contribute the funds necessary to operate CHH until the company passed the JCAHO review. The CHH members signed a Second Amended Operating Agreement (SAOA) governing CHH's operations. CHH also hired new staff, including Elena Asadov, and, in January 2018, CHH passed the JCAHO inspection.

By June 2018, Daniel served as CHH's de facto operations manager, Asadov supervised the clinical staff, and both had significant responsibilities for Medicare billing. At a CHH member meeting in June 2018, Golunova and Rychkova agreed to pay Daniel a $10,000 monthly salary (although Golunova purported to withdraw her consent to this salary in February 2019). Also in June 2018, CHH received its first reimbursement from Medicare, Daniel and Ann signed an allegedly secret agreement whereby Ann formally transferred her operations manager role to Daniel, and Daniel, Asadov and another CHH employee filed an application to start another home health agency (Angel).

Starting in June 2018 and continuing into 2019, Golunova and Rychkova increasingly complained that their access to the documentation needed to bill Medicare and to Kinnser, a proprietary software used by CHH and commonly used in the home health care industry to track patient services, had been restricted or eliminated by Asadov. Asadov testified that her concerns about patient confidentiality and the Health Insurance Portability and Accountability Act (42 C.F.R. § 403.812) (HIPPA)

caused her to restrict Golunova's and Rychkova's access to Kinnser. Significant tension developed between Golunova and Rychkova, on one side, and Daniel and Asadov on the other side.

Starting in 2018, Golunova and Rychkova also became concerned about CHH's expense reimbursements to Daniel. They suspected the expenses were personal, but Daniel maintained they were for legitimate business activities. Reimbursements were made for car lease payments, meals, parking, and gasoline. Another point of contention included a $25,000 bonus for Asadov, which CHH members approved after CHH obtained what Golunova and Rychkova later declared was a false milestone of 50 clients.

In July 2019, Golunova and Rychkova filed a complaint against Ann, Daniel, and Danma Consulting, Inc.[4] alleging breach of contract, breach of fiduciary duty, fraudulent concealment, willful misconduct, civil conspiracy, constructive fraud, and requesting an accounting. The first cause of action for breach of contract, alleged seven breaches of the SAOA: "(1) directing one or more CHH employees to change access to managerial software, without the knowledge or approval of [plaintiffs]; (2) hiring key employee[s] for CHH without the knowledge or approval of [plaintiffs]; (3) directing one or more key CHH employees to refuse cooperating with [p]laintiffs in discussing CHH operations; (4) directing one or more CHH employees to refuse [p]laintiffs access to CHH operational

---

[4] Danma was a separate entity through which Daniel received his $10,000 monthly salary from CHH.

4

documentation; (5) refusing [p]laintiffs access to CHH's premises; (6) conducting CHH business without engaging [p]laintiffs' involvement; and (7) conducting CHH business without consulting [p]laintiffs."

The second cause of action for breach of fiduciary duty alleged as breaches: "(1) forming or attempting to form a business competitive with CHH; (2) concealing [Daniel's] criminal record, which is a material fact for the operation of a highly regulated health care provider; (3) improperly drawing a 'salary' and using [Danma] for the purpose of receiving and passing through these funds taken from CHH; (4) convincing [p]laintiffs to pay out a bonus to Ms. Asadov, despite knowing that the bonus was based on false and misleading information; (5) directing one or more CHH employees to change access to managerial software without the knowledge or approval of [plaintiffs]; (6) directing one or more key CHH employees to refuse cooperating with [p]laintiffs in discussing CHH operations; [ ] (7) directing one or more CHH employees to restrict [p]laintiffs access to CHH operational documentation; [and] (8) conducting CHH business without [p]laintiffs' involvement or consent."

Defendants answered the complaint, and Ann and Daniel filed a cross-complaint against Golunova, Rychkova, Lyustin, and Rychkova's husband, Rychkov. Among other things, cross-complainants alleged that cross-defendants made unannounced visits to CHH, scared employees, took files, caused a change in access to CHH software, ignored or violated sections 6.1, 6.2.1, 6.4 of the SAOA regarding the CHH decision-making process,

5

improperly took $95,615.56 from CHH's bank account, and conspired to prevent the success and sale of CHH. The cross-complaint alleged breach of fiduciary duty (against Golunova and Rychkova), aiding and abetting breach of fiduciary duty (against Lyustin and Rychkov), violation of the Cartwright Antitrust Act based on an alleged conspiracy to prevent the sale of CHH (against all cross-defendants), and receipt of stolen property in violation of Penal Code section 496 based on the taking of money from CHH's bank account (against all cross-defendants); cross-complainants also sought injunctive relief and imposition of a constructive trust related to the money taken from CHH's bank account, as well as "reasonable attorneys' fees and costs."

Along with the cross-complaint, Ann filed an ex parte application for a temporary restraining order (TRO) and an order to show cause for the issuance of a preliminary injunction (OSC) enjoining the transferring, spending, disbursing or the dissipation of CHH money, and seeking the return of the $95,615.56. The court issued a TRO and OSC. Golunova filed a "Statement of Compliance and Non-Opposition" stating she returned the $95,615.56. Rychkova filed a similar statement of non-opposition. On August 29, 2019, the court issued an order granting a preliminary injunction enjoining Golunova, Rychkova, and their agents from taking CHH funds.

In December 2019, the court appointed a receiver for CHH. During the receivership, Medicare implemented a change to its reimbursement process, and, by early 2020, CHH's billing was in arrears and it became unprofitable. In 2020, the court ordered

6

the receiver to transfer all existing patients to other agencies and cease CHH's operations. By the end of 2020, CHH was no longer a functioning company. In October 2020, the court issued an order approving the receiver's final report, discharged the receiver, and ordered the receiver to relinquish control of CHH to the parties as joint owners.

After a bench trial in June 2022 on the complaint and the cross-complaint against Golunova, Rychkova and Lyustin, the court issued its statement of decision.[5]

The court rejected plaintiffs' claim that "Ann breached the SAOA by paying Daniel a management fee after Golunova withdrew her consent, because the three-fourths requirement needed under [section 6.7] the SAOA was no longer satisfied." The court found the SAOA did not authorize Golunova to unilaterally remove Ann or Daniel as managers, and, in any event, plaintiffs suffered no damages.

The court rejected plaintiffs' claim of breach of the SAOA through obstruction of access to company books and records, including Kinnser. The court found no breach of the SAOA by having CHH's physical books and records kept in a locked office, and, even if the denial of access to Kinnser constituted a breach, plaintiffs suffered no damages. Plaintiffs' related fiduciary duty claim also failed.

---

[5] Cross-defendant Rychkov was dismissed without prejudice in February 2022.

Next, plaintiffs complained of breach of contract because defendants prevented them from managing the operations of CHH, and this complaint incorporated the alleged secret agreement between Ann and Daniel to allow Daniel to manage CHH. The court found plaintiffs had knowledge of the material substance of Ann and Daniel's agreement, and the SAOA authorized Ann to manage day-to-day affairs of CHH and to delegate this authority to Daniel. For the same reason that management authority was vested in Ann and Daniel, plaintiffs' claims regarding access to CHH employees failed. Furthermore, plaintiffs did not establish damages.

The court next rejected plaintiffs' claim that defendants breached the SAOA through Ann's failing to provide annual budgets, with the result that Daniel's expense reimbursements were unauthorized expenditures. Again the court found "there was no breach of contract or fiduciary duty because first Ann then Daniel had authority to operate CHH." Daniel's reimbursements were largely for CHH business, and those that may not have been could only have resulted in de minimis damages. The court reached the same conclusion regarding the following alleged contractual issues: "[]e.g., Ann [ ] wrote a $22,343.25 check in excess of the $20,000 authority she had; she failed to attend four (4) board meetings; and she failed to engage in mediation prior to plaintiffs initiating litigation." Plaintiffs' related fiduciary duty claim also failed.

The court rejected plaintiffs' additional fiduciary duty claims. With respect to the failure to disclose Daniel's criminal

8

background, the court found Daniel's criminal background may have put CHH at risk of having to pay back all money received from Medicare, but Golunova knew of Daniel's criminal background all along. Rychkova may not have known until 2019, but she suffered no damages. The court ruled that plaintiffs had not established that defendants misrepresented the 50-client milestone or that defendants violated their fiduciary duties by purposefully delaying billing to devalue CHH. Plaintiffs' contentions with respect to the failure to disclose the start of a competing company (Angel) failed because plaintiffs had no damages.

Finally, the court determined that cross-complainants largely conceded the cross-claims. The evidence at trial established the approximately $95,000 taken from CHH's bank account was returned, and there was no proof of damages from that act or from any other alleged wrongful act.

On February 3, 2023, the court entered a judgment that plaintiffs take nothing from defendants, and that cross-complainants take nothing from cross-defendants.

## DISCUSSION

We start our discussion with appeal No. A168855, wherein defendants timely challenge the court's postjudgment order denying them attorney fees and costs.

## I. Additional Background

On January 6, 2022, with trial to start within weeks, defendants made an offer under section 998 to submit to a judgment in plaintiffs' favor as follows: "1. Payment of within 7

business days of $1,000 to [Golunova] and $1,000 to [Rychkova]; [¶] 2. All cross-claims to be dismissed with prejudice; [¶] 3. Each party releases the other parties from all claims pleaded or [that] could have been pleaded in the operative complaint and cross-complaint; [¶] 4. All parties bear their own fees and costs; [¶] 5. Plaintiffs will promptly sign the Cost Report for submission to [Center for Medicare and Medicare Services]. All parties will cooperate to the best of their ability to do any act reasonably necessary to enable the Cost Report to be accepted by [Center for Medicare and Medicare Services]; The parties ask the court, and the court agrees, to retain jurisdiction pursuant to [section] 664.6 to enforce the non-monetary provisions of this offer." The offer was not accepted.

Following the entry of judgment, plaintiffs and cross-defendants filed a memorandum of costs under sections 1032 and 1033.5 seeking $51,742.35. Thereafter, they moved for $640,174 in attorney fees and $64,770.66 in additional costs. They argued the cross-claims arose from the SAOA, they defeated those claims entirely, and they were entitled to attorney fees under Civil Code section 1717 as the prevailing parties on the cross-claims. The relevant attorney fee provision in the SAOA states, "In the event of a dispute hereunder, the prevailing party shall be entitled to its reasonable attorney's fees and costs."[6]

Defendants similarly filed a memorandum of costs for $49.672.01 under sections 1032 and 1033.5 and moved under

---

[6] The parties do not argue in this appeal that this provision allows for the recovery of attorney fees and costs for tort claims.

Civil Code section 1717 and section 998 for attorney fees. In their motion, defendants also claimed entitlement to additional "non-statutory costs" because they prevailed on the only contract claim in the litigation under Civil Code section 1717. Defendants argued they were the prevailing parties under Civil Code section 1717 because they had prevailed on plaintiffs' breach of contract claim and their cross-complaint sounded in tort. Defendants also moved to strike or tax plaintiffs' and cross-defendants' memorandum of costs, arguing defendants were prevailing parties under section 1032.

Plaintiffs opposed defendants' motion for fees and costs, arguing the court had discretion to decide that neither party was the prevailing party under Civil Code section 1717 because neither party recovered monetary relief. Plaintiffs also argued defendants' section 998 offer was not in good faith because the offer did not include any provision for indemnification for potential claims from Medicare or the State of California, which plaintiffs argued was always their main concern during settlement discussions.

At the hearing on the motions, the court announced its intent to deny the motions because neither side had obtained meaningful relief and neither side was a prevailing party. The court then provided "independent reasons" supporting its tentative denial, including that this was not an action on a contract, the section 998 offer was not made in good faith because it did not address plaintiffs' demand to indemnify them from potential claims made by Medicare or the State of California, and

11

Golunova and Rychkova were not prevailing parties under section 1032.[7] At the end of the hearing, the court stated that its tentative ruling was the final ruling and ordered defendants to submit a written order.

In the ensuing written order, the court first denied plaintiffs' motion, stating there was no prevailing party for the reasons it set out subsequently in its denial of defendants' motion and "because [Golunova and Rychkova] conceded in their written opposition to [defendants' motion], that there was no prevailing party." Turning to defendants' motion, the court wrote, "With respect to an award of attorney's fees and costs pursuant to Civil Code § 1717, the Court finds that the action was not a contractual dispute. Although the complaint contains one cause of action labelled as 'breach of contract,' the nature of the claim was one of breach of fiduciary duty. None of the other causes of action brought by the plaintiffs in their complaint, or the defendants in their cross-complaint, were even nominally contractual in nature." The court granted defendants' motion to tax or strike costs "for the reasons stated above, i.e., that [p]laintiffs are not prevailing parties." The court also denied defendants' motion for attorney fees and costs under section 998 because the action was not contractual, and the court adopted the argument that the section 998 offer was unreasonable for the reason argued in plaintiffs' opposition.

---

[7] The court also provided additional reasons for denying costs to Lyustin and attorney fees to Rychkov, but we omit this part of the court's order because those rulings are not challenged in this appeal.

12

## II.    Civil Code Section 1717

The trial court concluded the action was for breach of fiduciary duty and the parties did not bring claims "on a contract" under Civil Code section 1717.  The parties also appear to agree that the trial court alternatively concluded there was no prevailing party in any event under Civil Code section 1717 because neither party obtained any meaningful relief.

Defendants' main argument on appeal is that the court erred in denying attorney fees under Civil Code section 1717 because defendants prevailed on the only contract claim in the litigation.  (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 866 (*Hsu*) [where defendant is sole victor on contract claims, defendant is the party prevailing on the contract as a matter of law].)  Alternatively, defendants contend the trial court abused its discretion in finding there was no prevailing party because neither party achieved its litigation goals.  Reviewing the first issue de novo (*Andrade v. Western Riverside Council of Governments* (2024) 99 Cal.App.5th 1020, 1025), we disagree with the trial court.  However, we will affirm the court's order because we find no abuse of discretion (*Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1109 (*Scott Co.*)) in the court's alternative ruling.

### A. Governing Legal Principles

"In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he

13

or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (Civ. Code, § 1717, subd. (a).)

"When a party obtains a simple, unqualified victory by completely prevailing on or defeating all contract claims in the action and the contract contains a provision for attorney fees, [Civil Code] section 1717 entitles the successful party to recover reasonable attorney fees incurred in prosecution or defense of those claims.  [Citation.]  If neither party achieves a complete victory on all the contract claims, it is within the discretion of the trial court to determine which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees.  '[I]n deciding whether there is a "party prevailing on the contract," the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources.' " (*Scott Co.*, *supra*, 20 Cal.4th at p. 1109.)

While it may be " ' "difficult to draw definitively from case law any general rule regarding what actions and causes of action will be deemed to be 'on a contract' for purposes of [section] 1717," ' " (*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 242), the following guidelines apply. " 'California courts construe the term "on a contract" liberally.' " (*Id.* at p. 240.)  The phrase "includes not only a traditional action for damages for breach of a contract containing an attorney fees

14

clause [citation], but also any other action that 'involves' a contract under which one of the parties would be entitled to recover attorney fees if it prevails in the action [citation]." (*Ibid.*) A cause of action "involves" a contract where it "arises out of, is based upon, or relates to an agreement by seeking to define or interpret its terms or to determine or enforce a party's rights or duties under the agreement." (*Id.* at p. 242.)

Where the question is whether an action is "based on contract or tort[,]" the answer "depends upon the nature of the right sued upon, not the form of the pleading or relief demanded. If based on [a] breach of promise it is contractual; if based on [a] breach of a noncontractual duty it is tortious. [Citation.] If unclear the action will be considered based on contract rather than tort." (*Arthur L. Sachs, Inc. v. City of Oceanside* (1984) 151 Cal.App.3d 315, 322 (*Sachs*); accord, *Kangarlou v. Progressive Title Co., Inc.* (2005) 128 Cal.App.4th 1174, 1178.) We "look to the pleading to determine the nature of plaintiff's claim" (*Sachs,* at p. 322), and we also look to the theories asserted and the evidence produced at trial and any additional evidence submitted on the motion in order to identify the legal basis of the prevailing party's recovery. (*Hyduke's Valley Motors v. Lobel Financial Corp.* (2010) 189 Cal.App.4th 430, 435.) In making this assessment, we look to the causes of action individually. (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 615 ["[i]f an action asserts both contract and tort or other noncontract claims, section 1717 applies only to attorney fees incurred to litigate the contract claims"].)

15

"An act such as breach of fiduciary duty may be both a breach of contract and a tort." (*Kangarlou*, *supra*, 128 Cal.App.4th at p. 1178.) As noted above, if the nature of the right sued upon is unclear, the action will be considered based on contract rather than tort. (*Id.* at pp. 1178–1179, quoting *Sachs*, *supra*, 151 Cal.App.3d at p. 322.) "[T]he dispositive question is whether [the] pleading served to put the contract theory in issue." (*Perry v. Robertson* (1988) 201 Cal.App.3d 333, 338.)

### B. Both Sides Brought Claims "On A Contract"

Applying the above guidelines, we conclude that plaintiffs brought a cause of action "on a contract" under Civil Code section 1717. Plaintiffs first cause of action was for "breach of contract." Plaintiffs alleged, "Defendants breached [the SAOA] at least by: (1) directing one or more CHH employees to change access to managerial software, without the knowledge or approval of either Plaintiffs; (2) hiring key employee[s] for CHH without the knowledge or approval of either Plaintiffs; (3) directing one or more key CHH employees to refuse cooperating with Plaintiffs in discussing CHH operations; (4) directing one or more CHH employees to refuse Plaintiffs access to CHH operational documentation; (5) refusing Plaintiffs access to CHH's premises; (6) conducting CHH business without engaging Plaintiffs' involvement; and (7) conducting CHH business without consulting Plaintiffs." Plaintiffs also prayed for "attorney's fees pursuant to contract."

At trial, plaintiffs' counsel discussed the relevant portions of the SAOA in opening argument, including the attorney fees

16

provision, and maintained that defendants breached the SAOA in opening and closing argument. For example, counsel highlighted that section 6.7 of the SAOA required 75 percent of CHH members to approve a management fee and plaintiffs were damaged by the payment of Daniel's management fee because, after Golunova withdrew her consent, there was no a longer 75 percent consensus. Defense counsel also highlighted the important provisions of the SAOA in argument and maintained that plaintiffs' complaint failed because they had no damages and because plaintiffs, not defendants, breached the contract as well as their fiduciary duties.

Finally, the court's statement of decision clearly adjudicated plaintiffs' claims that defendants violated contractual duties owed under the SAOA.

In sum, plaintiffs pursued stand-alone breach of contract claims, as well as other claims where the acts at issue were pursued as both breaches of the SAOA and breaches of fiduciary duty. In seeking to enforce the promises of the SAOA, plaintiffs filed and litigated claims "on a contract" for purposes of Civil Code section 1717.

Next, because it is at least "unclear" whether the cross-complaint invoked a contractual duty, we ultimately conclude the cross-complaint also included a claim "on a contract."[8]

---

[8] Defendants argue that plaintiffs waived any argument that the cross-complaint was an action on the contract by failing to pursue an appeal of the trial court's ruling. But defendants argue they are entitled to attorney fees because they prevailed on the *only* contract claim in the litigation on appeal, and their claim

17

(See *Kangarlou, supra*, 128 Cal.App.4th at pp. 1178–1179.) Cross-complainants alleged that section 6.2.1 of the SAOA made Ann the manager in charge of CHH's day-to-day operations, section 6.1 provided that CHH shall be controlled by its members acting unanimously, and section 6.4 provided that 75 percent of the members must approve of transactions out of the ordinary course of business. The pleading alleged that cross-defendants "ignored or violated Sections 6.1, 6.2.1, 6.4 of the [SAOA] regarding the decisional making process as set forth in the [SAOA]" and it also alleged that cross-defendants embezzled money from CHH's bank account in the body of the complaint and the first and second claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty.

In their papers supporting the request for the TRO and preliminary injunction, cross-complainants submitted the SAOA as "the agreement governing the rights of the members" of CHH. They maintained that, per sections 6.1, 6.2.1, 6.4, Ann was the day-to-day manager of CHH and any decision contrary to her decisions had to be by unanimous consent of the members or by 75 percent of the members if the decision related to matters outside the ordinary course of business. They also contended that Ann did not consent to the taking of the $95,615.56 from CHH's bank account and "[t]he taking of the money is contrary to the provisions of the [SAOA], the operating agreement that governs the operations of [CHH] and a violation of California

_____

for affirmative relief requires us to determine de novo whether or not the cross-complaint brought a claim on a contract.

18

Corporations Code Section 17704.09 — a breach of the members' duty of loyalty and duty of care."

The trial record does not shed much additional light on the issue before us as cross-complainants "largely conceded" their crossclaims. Nonetheless, cross-complainants briefly argued that "the evidence is going to show that it was the plaintiffs, not [defendants], who breached the [SAOA], that it was the plaintiffs who breached their fiduciary duties to CHH, not [defendants]." And they asserted, "The record of evidence throughout this case, all the way through, is that the defendants were always the ones trying to keep the company operating . . . while it was the plaintiffs who were trying to — who were disrupting the operations. Who were attempting to — or repudiated the agreement. Who took money out of the company that the company needed to operate. . . . All of that conduct goes to the points that it was the plaintiffs who didn't want CHH to continue. And I think the evidence of that is overwhelming."

In sum, while the cross-complaint alleges breaches of the statutory duties of care and loyalty (Corp. Code, § 17704.09), it also alleges that cross-defendants violated the SAOA. The pleading appears to have put the contract theory "in issue" (*Perry*, *supra*, 201 Cal.App.3d at p. 338), and it is at least ambiguous whether cross-complainants pursued a contractual theory from their litigation conduct. We accordingly find the cross-complaint brought a claim "on a contract" under Civil Code section 1717.

19

### C. The Court's Alternative Ruling That No Party Prevailed

Having determined that both parties presented claims "on a contract," we turn to the court's alternative ruling that there was no prevailing party. On this issue, defendants' contention is that the trial court abused its discretion because defendants filed a defensive cross-complaint, but we are not persuaded. (*Scott Co.*, *supra*, 20 Cal.4th at p. 1109.) *Hsu* observed in dicta in a footnote that, where there are cross-actions on a contract and no relief is awarded, a trial court is not obligated to find there is no party prevailing on the contract and *may* find the defendant to be the prevailing party. (*Hsu*, *supra*, 9 Cal.4th at p. 875, fn. 10.) But *Hsu* does not require the trial court to find that the defendant is the prevailing party when a defensive cross-complaint fails, so defendants do not show the court's ruling here was an abuse of discretion.

## III. Costs Under Sections 998 and 1032

### A. Section 998

"[S]ection 998 establishes a procedure to shift costs if a party fails to accept a reasonable settlement offer before trial. The purpose of the statute is to encourage pretrial settlements." (*Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 764.) A plaintiff who rejects a defendant's settlement offer and does not obtain a more favorable judgment "shall pay the defendant's costs from the time of the offer." (§ 998, subd. (c)(1).)

A section 998 "offer must be valid and made in good faith." (*Ayers v. FCA US, LLC* (2024) 99 Cal.App.5th 1280, 1293.)  A valid offer is written and sufficiently specific, it contains the terms of the offer, including a mechanism for acceptance, and it provides for entry of judgment or a legal equivalent if accepted. (*Ibid.*)  Once the offeror shows the section 998 offer is valid, the burden shifts to the offeree to show the offer was not made in good faith.  (*Licudine v. Cedars-Sinai Medical Center* (2019) 30 Cal.App.5th 918, 926.)

In this case, plaintiffs challenged only the good faith of the section 998 offer below.  "Although section 998's text does not itself condition validity upon an offeror's good faith, such a requirement is necessarily implied by the statute's purpose: Section 998 is meant 'to encourage the settlement of lawsuits prior to trial' [citations], and it uses the proverbial 'stick' to do so: 'Accept this offer or you will face additional financial consequences for rejecting it.'  [Citation.]  If a section 998 offer has no 'reasonable prospect of acceptance,' an offeree will reject the offer no matter what and applying section 998's punitive 'stick' will do nothing to encourage settlement.  [Citation.]  Applying the 'stick' in such instances would instead encourage litigants to 'game the system by making . . . offers they can reasonably expect the [offeree] will refuse,' allowing them 'to benefit from a no-risk offer made for the sole purpose of later recovering large expert witness fees' and, if they are plaintiffs, prejudgment interest.  [Citations.]  The good faith requirement

21

prevents this perversion of section 998." (*Licudine, supra,* 30 Cal.App.5th at p. 924.)

"A [section] 998 offer is made in good faith only if the offer is ' "realistically reasonable under the circumstances of the particular case" ' [citation] — that is, if the offer ' "carr[ies] with it some reasonable prospect of acceptance[.]" ' " (*Licudine, supra,* 30 Cal.App.5th at p. 924.) "Whether a section 998 offer has a reasonable prospect of acceptance is a function of two considerations, both to be evaluated in light of the circumstances ' "at the time of the offer" ' and ' "not by virtue of hindsight." ' [Citations.] First, was the [section] 998 offer within the 'range of reasonably possible results' at trial, considering all of the information the offeror knew or reasonably should have known? [Citation].) Second, did the offeror know that the offeree had sufficient information, based on what the offeree knew or reasonably should have known, to assess whether the 'offer [was] a reasonable one,' such that the offeree had a 'fair opportunity to intelligently evaluate the offer'?" (*Id.* at pp. 924–925.)

A token or nominal section 998 offer normally will not satisfy the good faith requirement unless it is "absolutely clear that no reasonable possibility exists that the defendant will be held liable." (*Wear v. Calderon* (1981) 121 Cal.App.3d 818, 821.) Reasonableness is best measured by "how well [the offer] approximates the amount the party will have to pay if found liable," after "discount[ing] for the probability of success of the claim . . . ." (*Thompson v. Miller* (2003) 112 Cal.App.4th 337, 339.) Thus, even where the prospect of liability is "tenuous,"

22

where a defendant faces "enormous exposure," a trial court does not abuse its discretion in denying the recovery of section 998 costs when an offer is unreasonable. (*Pineda v. Los Angeles Turf Club, Inc.* (1980) 112 Cal.App.3d 53, 63 [in wrongful death action where plaintiffs sought $10 million, defendant's $2,500 offer suggested it "had no expectation that its offer would be accepted" and offer was therefore "not realistic"].) On the other hand, " '[e]ven a modest or "token" offer may be reasonable if an action is completely lacking in merit.' " (*Bates v. Presbyterian Intercommunity Hospital, Inc. (*2012) 204 Cal.App.4th 210, 220.)

"Whether the settlement offer was reasonable and made in good faith is left to the sound discretion of the trial court. [Citation.] However, when a party obtains a judgment more favorable than its pretrial offer, it is presumed to have been reasonable and the opposing party bears the burden of showing otherwise. . . . On appeal, the losing party has the burden of establishing the trial court abused its discretion. [Citation.] We will not substitute our opinion for that of the trial court unless the trial court clearly abused its discretion, resulting in a miscarriage of justice." (*Thompson, supra*, 112 Cal.App.4th at pp. 338–339.)

Applying the above authorities, defendants have established the court abused its discretion by applying the wrong legal standard to assess good faith. The court should have asked whether (1) the section 998 offer was within the range of reasonably possible results at trial, considering all of the information the offeror knew or reasonably should have known,

23

and (2) whether the offeror knew that the offeree had sufficient information, based on what the offeree knew or reasonably should have known, to assess whether the offer was reasonable. (*Licudine, supra,* 30 Cal.App.5th at pp. 924–925.) Plaintiffs did not show that it was legally possible to receive a judgment including indemnification for future government claims as a remedy. The court nonetheless adopted plaintiffs' position that the section 998 offer was unreasonable because it failed to include this indemnity provision. This record thus shows the court ruled that the section 998 offer was made in bad faith simply because it failed to include a term plaintiffs insisted upon. In doing so, the court applied the wrong legal standard. We accordingly reverse and remand the court's order with respect to the section 998 offer. When assessing the good faith requirement under section 998, the court is to use the proper legal standard. (See *Duff v. Jaguar Land Rover North America, LLC (*2022) 74 Cal.App.5th 491, 504–505 [remanding where court used wrong legal standard to determine whether party was a prevailing buyer for purposes of attorney fee award under Song-Beverly Consumer Warranty Act]; *Walker v. Ticor Title Co. of California* (2012) 204 Cal.App.4th 363, 374 [vacating attorney fees award made under wrong legal standard and remanding for reconsideration under proper legal standard].)[9]

---

[9] Plaintiffs argue briefly on appeal that the section 998 offer was also unreasonable because it required them to sign a cost report for submission to Medicare when they lacked access to the records they would need to evaluate the accuracy of that report. Plaintiffs did not raise this argument below or make any

### B. Section 1032

Defendants next contend they were entitled to costs as a matter of right under section 1032, and plaintiffs do not respond to this argument. We agree with defendants. When neither the plaintiff nor the defendant who has filed a cross-complaint prevails, the defendant is the prevailing party entitled to costs under section 1032. (*McLarand, Vasquez & Partners, Inc. v. Downey Savings & Loan Assn.* (1991) 231 Cal.App.3d 1450, 1454–1455; *Cussler v. Crusader Entertainment, LLC* (2012) 212 Cal.App.4th 356, 371–372; § 1032, subd. (a)(4) ["prevailing party" includes "a defendant where neither plaintiff nor defendant obtains any relief"].)[10] On remand, the trial court is to award defendants the costs they sought under sections 1032 and 1033.5 in their February 2023 memorandum of costs.

### IV. Motion to Strike or Tax Rychkov's Costs

In appeal No. A167542, cross-complainants Ann and Daniel appeal the court's order denying their motion to strike or tax dismissed cross-defendant Rychkov's memorandum of costs. For the reasons explained below, we conclude that cross-complainants have established the court abused its discretion by

---

argument with respect to the valuation of this condition. Because we reverse the trial court's order with respect to section 998, plaintiffs may raise the challenges they deem pertinent to the section 998 offer on remand.

[10] A prevailing party for purposes of costs under section 1032 is not necessarily a prevailing party for an award of attorney fees under Civil Code section 1717. (*McLarand, Vasquez & Partners, Inc., supra*, 231 Cal.App.3d at p. 1456.)

applying the wrong legal standard in deciding defendants' motion.

### A. Background

Rychkov was dismissed from this litigation on February 16, 2022, and filed a memorandum of costs requesting $15,831.22, divided into three categories: $5,277.07 for filing and motion fees, $5,277.07 for deposition costs, and $5,277.07 for costs for service of process. Rychkov, who was jointly represented with plaintiffs and the other cross-defendants, attached his counsel's records of costs incurred from November 22, 2019, to April 20, 2022, as an exhibit to his declaration and swore the invoices were "for costs necessarily incurred in this case." The total amount of costs listed in the attachment was $51,567.32.

Ann and Daniel moved to strike or tax costs, arguing Rychkov overstated his costs and simply divided (incorrectly) the total costs incurred by the jointly represented parties by the number of parties. They maintained the documentation attached to Rychkov's declaration contained costs that were not reasonably necessary to Rychkov's defense, including, for example, costs for filings by plaintiffs only and costs incurred after Rychkov was dismissed. Along with their motion, Ann and Daniel submitted a declaration from their counsel stating that she had reviewed the exhibit setting forth costs attached to Rychkov's declaration, and she had created and attached a table of objections that listed the parties involved with respect to each item of claimed cost that she based on her knowledge of the case and the docket filings.

Rychkov submitted an amended memorandum of costs along with his opposition to the motion to tax or strike costs requesting revised costs of $34,617.23. He explained that he had filed an "[a]mended [m]emorandum of [c]osts that detail[s] the dates, purposes and charges incurred," and he maintained he was the prevailing party entitled to costs from the date he was sued (August 20, 2019) to the date of his dismissal (February 16, 2022). Rychkov argued that apportionment of costs was allowed in a joint representation situation, and he explained that he had originally apportioned the costs incurred by the jointly represented parties by seeking ¼ the total costs.

At the hearing on the motion and in their reply brief, Ann and Daniel urged the court to disregard the untimely amended memorandum of costs and maintained that Rychkov's initial costs memorandum was deficient on its face. At the hearing, Rychkov's counsel explained that Rychkov's initial memorandum of costs was filed by an associate who was new to the practice of law, and, after reviewing it, counsel filed an amended memorandum because the initial filing failed to include appropriate detail.

The court indicated that it was learning towards denying the motion. The court said to counsel for Ann and Daniel, "I'm inclined to agree with you and not grant the Amended Memorandum of Costs but disagree with you and grant the costs originally requested. My reasoning is as follows: (1) I think that their original Memorandum of Costs reflects reasonable expenses, and they are allowable per [section] 1032, et cetera.

27

Sometimes when costs are so intertwined between multiple parties or multiple plaintiffs, as in this case, I think that it is allowable for the Court to apportion the costs. We're talking about a total of $15,831. And it would be virtually impossible for anyone, including [plaintiffs'] counsel or the Court to just pull all that apart. I just don't think it's realistic."

After hearing further argument and confirming that it had seen the documentation submitted with the initial costs memorandum, the court announced, "I'm [going to] approve [Rychkov's] original Memorandum of Costs. The total is $15,831 and 22 cents. There's good cause to do so, and the costs are reasonable. I'm going to ask you, [Rychkov's counsel] to prepare a short order which I'll sign as soon as I receive it." The court subsequently signed an order denying Ann's and Daniel's motion and granting Rychkov $15,831.22 in costs.

A. Analysis

Ann and Daniel argue that, although Rychkov was the prevailing party under section 1032, the court erred in awarding costs because it made an across-the-board reduction based on the number of jointly represented parties without undertaking any review to ensure that the costs were reasonably necessary to litigate the crossclaims against Rychkov. We conclude that the court abused its discretion by applying the wrong legal standard and failing to consider the necessity or reasonableness of the costs as required by section 1033.5, subdivision (c). (*Charton v. Harkey* (2016) 247 Cal.App.4th 730, 739, 744–745 (*Charton*).)

28

Section 1032, subdivision (b) provides that "a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." A defendant in whose favor a dismissal is entered is a prevailing party for purposes of the statute. (*Id.*, subd. (a)(4).) All costs awarded to a prevailing party must be (1) incurred by that party, whether or not paid; (2) "reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation"; and (3) reasonable in amount. (§ 1033.5, subd. (c)(1)–(3).)

Numerous cases provide guidance on the award of costs in situations where parties are jointly represented. In *Fennessy v. Deleuw-Cather Corp.* (1990) 218 Cal.App.3d 1192, 1194, cited by Ann and Daniel, plaintiff sued six defendants. One defendant won a motion for summary judgment against the plaintiff and sought to recover all costs incurred by the jointly represented defendants, including the nonprevailing defendants. (*Ibid.*) The trial court rejected the plaintiff's argument that the defendant was not entitled to have the costs apportioned between the six defendants, and the appellate court reversed. (*Ibid.*) The appellate court held that, where a prevailing party incurs costs jointly with parties who remain in the litigation, *during the pendency of the litigation* that party may recover only costs actually incurred by that party in prosecuting or defending the case. (*Id.* at p. 1196.)

In *Charton*, the plaintiffs dismissed an aiding and abetting claim against Harkey prior to a jury trial, the jury found Harkey's co-defendants liable on multiple claims, and the court

29

subsequently adjudicated the plaintiffs' equitable claims against Harkey in Harkey's favor. (*Charton, supra*, 247 Cal.App.4th at pp. 735–736.) Harkey joined with her co-defendants to file a memorandum of costs seeking nearly $329,000, the plaintiffs moved to tax or strike costs, and the trial court awarded 25 percent of the recoverable costs to Harkey. (*Id.* at pp. 736–737.) The appellate court reversed. (*Id.* at p. 745.)

*Charton* recognized the following rules:  " ' "When a prevailing party has incurred costs jointly with one or more other parties who are not prevailing parties for purposes of an award of costs, the judge must apportion the costs between the parties" [based on the reason the costs were incurred and whether they were reasonably necessary to the conduct of the litigation by the jointly represented party who prevailed].' " (*Charton, supra*, 247 Cal.App.4th at pp. 743–744.) "Whether to award costs that were incurred by both the prevailing party and the nonprevailing party, and were reasonably necessary to the conduct of the litigation for both the prevailing and nonprevailing party, is left to the trial court's sound discretion based on the totality of the circumstances." (*Id.* at p. 744.) "In allocating costs between jointly represented parties, however, the trial court may not make an across-the-board reduction based on the number of jointly represented parties because such an allocation fails to consider the necessity or reasonableness of the costs as required by *section 1033.5, subdivision (c)*." (*Id.* at pp. 744–745, italics added.) *Charton* found the trial court there erred by making "an across-the-board allocation based on the number of jointly

30

represented defendants, awarding Harkey 25 percent of all costs defendants incurred because she was one of four jointly represented defendants. The court erred because it failed to apply the proper legal standards in making the allocation." (*Id.* at p. 745.)

Most recently in *Quiles v. Parent* (2018) 28 Cal.App.5th 1000, 1005, Quiles and other co-plaintiffs brought a proposed class action against the defendant employer for wage and hour and unfair competition violations, and Quiles also brought a federal wrongful employment termination claim. After a jury found for Quiles on her wrongful termination claim and Quiles dismissed her remaining claims, she sought to recover attorney fees and costs. (*Id.* at p. 1006.) The trial court granted Quiles's request but awarded her a reduced amount of attorney fees and costs. (*Id.* at pp. 1006–1007.) On appeal, *Quiles* rejected the defendant's claim that court erred by awarding Quiles costs she did not incur "solely for her benefit" but instead "jointly incurred with other plaintiffs who continued to litigate their claims." (*Id.* at pp. 1005, 1014.) The court found, "The trial court painstakingly reviewed the lengthy record regarding Quiles's requests for attorney fees and costs and awarded her what the court determined she reasonably incurred on her own behalf and in relation to her successful claim." (*Id.* at p. 1005.)

Here, although Rychkov contends that this case is like *Quiles*, our review of the record convinces us the case is akin to *Charton*. Below, Ann and Daniel objected that Rychkov apportioned costs merely by dividing the total costs incurred by

31

all jointly represented parties by four, and Rychkov conceded that is what he had done. Rychkov also agreed that the cut-off date for any reasonably necessary cost he could have incurred was the date of his dismissal, yet Rychkov's costs request included many costs incurred after his dismissal. Although the court declared the costs sought to be "reasonable," it also stated that "it would be virtually impossible for anyone, including [plaintiffs'] counsel or the Court to just pull all that apart. I just don't think it's realistic." We presume the court understands the law and the scope of its discretion on a silent record, but this record affirmatively shows the court accepted Rychkov's across-the-board reduction without examining the reason each claimed cost was incurred and assessing whether the cost was reasonably necessary to the conduct of the litigation by Rychkov.

## DISPOSITION

In appeal No. A168855, the trial court's order denying defendants the attorney fees and costs they sought under Civil Code section 1717 is affirmed. The trial court's order denying defendants the costs they claimed under section 998 in their February 2023 memorandum of costs is reversed, as is the denial of the costs defendants claimed under section 1032 and 1033.5 in their February 2023 memorandum of costs. The matter is remanded to the trial court for further proceedings with respect to section 998 offer. When addressing the issue of good faith under section 998 on remand, the trial court is to use the proper legal standard consistent with this decision. On remand, the trial court shall also award to defendants as prevailing parties

32

the costs they claimed in their February 2023 memorandum of costs under sections 1032 and 1033.5.

In appeal No. A167542, the order is affirmed as to the trial court's determination that Rychkov is a prevailing party under section 1032 but reversed as to the amount of costs awarded. The matter is remanded to the trial court to allocate costs to Rychkov based on the principles discussed in this opinion.

In the interest of justice, the parties shall bear their own costs for these consolidated appeals.

BROWN, P. J.

WE CONCUR:

STREETER, J.
MOORMAN, J.[*]

*Golunova et al. v. Akhromtsev et al.* (A167542/A168855)

---

[*] Judge of the Superior Court of Mendocino County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

33